Ernest Freeman and Company, Appellee, v. Robert G. Regan Company, Appellant.

Gen. No. 44,019.

638

Opinion filed
December 17, 1947.  Released for publication January 9, 1948.

HENRY S. BLUM, of Chicago, for appellant; GEORGE M. SHKOLER and BERNARD G. SANG, both of Chicago, of counsel.

DEMPSEY, MILLS & CASEY, of Chicago, for appellees; LAWRENCE C. MILLS and JOHN W. MILLS, both of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

In a complaint at law filed in the superior court of Cook county on August 19, 1942, by Ernest Freeman and Company, a corporation, against Regan Contracting Corporation, a corporation, Robert G. Regan Company, a corporation, and Robert G. Regan, plaintiff alleged that it was in the business of installing electric wiring, fixtures and equipment; that Robert G. Regan is in the building and contracting construction business which he conducts in his own name and in the names of the defendant corporations; that he is the president and owns or controls "both of the defendant corporations"; that all of the defendants occupied the same offices and places of business and "in fact are but one business, alternating using one, two or all of said names, and whose assets and properties are so commingled that they are in fact one ownership"; that on or about October 3, 1939, Robert G. Regan, individually and as president of the other two defendants, entered into an agreement with plaintiff by which the latter was employed to perform all labor and work and furnish all materials for the complete electrical installation of 160 row houses and apartment buildings containing 394 apartments, garages and boiler house, to be constructed in Chatham Park in Chicago; that it was agreed that plaintiff was to be paid $123,000 for the performance of the work and the furnishing of the materials; that plaintiff did perform the work and furnished the materials and fully

performed the terms and conditions of the agreement on or about March 1, 1941; that the defendants failed to perform the terms and conditions of their agreement in that they did not pay plaintiff the price agreed upon; that there is due and owing to plaintiff under the agreement the sum of $2,000; that on or about March 12, 1941 "said indebtedness became an account stated"; and that the defendants are jointly and severally indebted to plaintiff in the sum of $2,000, plus interest at 5 per cent per annum from March 12, 1941. Plaintiff asked judgment for $2,000, plus interest thereon at the rate of 5 per cent per annum from March 12, 1941.

In an answer filed on October 2, 1942, in behalf of the "Regan Contracting Corporation, an Illinois corporation, Rogre Co. Inc., (formerly known as Robert G. Regan Company), an Illinois corporation, and Robert G. Regan, defendants in this cause," they admitted that the named corporations are Illinois corporations; and that on February 24, 1942, the corporate name of Robert G. Regan Company was changed by a certificate of amendment to its articles of incorporation to Rogre Co., Inc. In the answer Regan denies that he is in the building and contracting business or that he conducts the business in his own name; alleges that he is the president of the Regan Contracting Corporation and Rogre Co., Inc., (formerly known as Robert G. Regan Company); denies that he occupies the same office and place of business as the corporations; and the corporate defendants deny that they occupy the same place of business; deny that they are but one business; and deny that their assets or properties are commingled. Regan denied that he, individually or as president of Rogre Co., Inc., entered into an agreement with plaintiff on or about October 23, 1939, by which plaintiff was to perform labor and work and furnish all materials for the electrical installation of the structures at Chatham Park. Regan Contracting Corpora-

tion admitted that it entered into the agreement. Regan and Rogre Co., Inc., further denied that they made any agreement with plaintiff as to the payment of $123,000 for such work and labor and the furnishing of materials, while the Regan Contracting Corporation admitted that it agreed to pay plaintiff $123,000 for the performance of the work and labor and the furnishing of materials. Regan and Rogre Co., Inc., further denied that either of them owed plaintiff anything. Regan Contracting Corporation admitted that it owed plaintiff $2,000 with interest at 5 per cent per annum from March 12, 1941.

In a trial before the court without a jury the evidence showed that on October 3, 1939, a written contract was executed between plaintiff and the Regan Contracting Corporation for the furnishing of all materials and the performance of the electrical work on the Chatham Park project for $123,000. The bid of plaintiff was $125,000. It was awarded the contract on agreeing to do the work for $123,000. The contract was performed on the part of plaintiff. When the job was completed, it had received $121,000 and a balance of $2,000 remained due. In that trial plaintiff also introduced as an exhibit a letter on the letterhead of "Robert G. Regan Co., Building Construction, 228 N. La Salle Street, Chicago, Ill., March 12th, 1941," signed "Robert G. Regan Company, by Robert G. Regan," addressed to plaintiff and reading: "On or before sixty (60) days from date, we shall deliver to you twenty (20) shares of 5% Preferred Stock ($100 par value) of Chatham Park, Inc., or cash for Two Thousand Dollars ($2,000.00)." Regan testified that neither he, as an individual, or the Robert G. Regan Company had any connection with the Chatham Park contract. Defendant sought to introduce a certified copy of the certificate of amendment to the articles of incorporation of Robert G. Regan Company showing the change of name to Rogre Co., Inc., on Feb-

ruary 24, 1942. On objection of plaintiff the court declined to receive the proferred exhibit. The trial judge indicated that he would find the issues for the plaintiff and against the Regan Contracting Corporation and for the defendants, Robert G. Regan Company and Robert G. Regan. Thereupon the attorney for plaintiff called attention to plaintiff's exhibit #2, being the letter of March 12, 1941, and argued that the exhibit showed "an obligation from the Regan Company agreeing to pay that $2,000 in writing." The court inquired as to the consideration for the promise and counsel answered that the consideration was the "waiver," meaning the waiver by plaintiff of its mechanic's lien. Plaintiff's attorney concluded by saying, "Here is a written obligation of the corporation." However, the trial judge said he would enter the finding as he had indicated. On January 23, 1945, the court entered an "order of judgment" *nunc pro tunc* as of January 5, 1945. The order "finds that the plaintiff is entitled to judgment as demanded against the defendant, Regan Contracting Corporation, an Illinois corporation, in the sum of $2,000.00, with interest thereon at the rate of 5% per annum from March 12, 1941 to the date of this judgment, January 5, 1945, or a total sum of $2,381.30, together with the costs of this proceeding," and also "finds the issues for the defendants, Robert G. Regan and Robert G. Regan Company, an Illinois corporation." The record does not show that any judgment was entered on these findings.

On April 28, 1945, plaintiff filed a complaint at law in the circuit court of Cook county against Robert G. Regan Company alleging that the defendant is an Illinois corporation organized and existing under the laws of the State of Illinois; that defendant, by its president and duly authorized agent, for a valuable consideration, "executed in writing its promise to pay to plaintiff" a certain sum as disclosed in Exhibit

"A." This exhibit is the letter introduced in the superior court case as plaintiff's Exhibit #2 dated March 12, 1941, signed Robert G. Regan Company, stating that on or before 60 days it would deliver to plaintiff 20 shares of 5 per cent preferred stock of Chatham Park, Inc., or $2,000 in cash. The complaint further alleged that defendant failed to perform its promise by delivering either the stock or the money; that plaintiff made numerous demands on defendant for the performance of its promise, but that defendant refused and failed to perform. Plaintiff asked judgment for $2,000 plus interest at 5 per cent from March 12, 1941.

Defendant filed an answer and amended answers, to which plaintiff filed replies. The case was tried before the court without a jury. Toward the close of the trial, defendant, pursuant to leave of court, filed its second amended answer wherein it denied that it received any consideration for Exhibit "A," attached to the complaint, or that it executed Exhibit "A." Defendant further alleged that it was not in existence under the corporate name of Robert G. Regan Company at the time suit was brought, but that by an amendment to the charter of Robert G. Regan Company on February 24, 1942, the name of that corporation was changed to Rogre Co., Inc.; that at the time the name was so changed a new corporation bearing the name of Robert G. Regan Co. was organized, having no connection with the Rogre Co., Inc., or the prior Robert G. Regan Company, and having no connection "with the transaction involved in these proceedings"; that defendant undertook no promise as set forth in the complaint; that it did not make any agreements with plaintiff; that there was no obligation on it to deliver to plaintiff either stock or money as set forth in the complaint; that the cause of action stated in the complaint cannot be maintained by plaintiff because the subject matter was fully adjudicated in the superior

court case; that the proceedings in the superior court involved the same subject matter as in the instant proceeding; that plaintiff in the superior court case based its claim in part on the document sued upon in the instant suit; and that after trial the superior court entered an order of judgment, a copy of which was attached to the second amended answer. On June 28, 1946, the court found the issues for the plaintiff and entered judgment against the defendant in the sum of $2,500. Defendant appeals. Plaintiff states that the court should not have permitted the filing of the second amended answer, but does not make any point or argue, that the court erred in so ruling.

In the trial of the second case and in this court the respective parties treat the order entered in the first case on January 23, 1945 (*nunc pro tunc* as of January 5, 1945) as a judgment order. As the order is headed "Order of Judgment," we assume that it was the intention of the court to enter a judgment. See *Chicago Portrait Co. v. Chicago Crayon Co.*, 217 Ill. 200. Assuming, as the parties do, that there was a final judgment in the superior court, we turn to the contention of defendant that under the doctrine of *res judicata* plaintiff cannot maintain its action. In *Phelps v. City of Chicago*, 331 Ill. 80, the court said (85):

"The rule of *res judicata* embraces not only what actually was determined in the former case between the same parties or their privies, but it extends to any other matters properly involved which might have been raised and determined. [Citing cases.] The rule of *res judicata*, or estoppel by judgment, where there is no want of jurisdiction, is operative whether the judgment be erroneous or not."

A mere change in the theory of what is essentially a single cause of action may not be sufficient to prevent the application of the doctrine of *res judicata*, espe-

cially where the questions raised in the second action might have been litigated in the first suit. A party cannot preserve the right to bring a second action after the loss of the first merely by having circumscribed and limited the theories of recovery opened by the pleadings in the first. Where a demand or right of action is in its nature entire and indivisible, it cannot be split up into several causes of action and sued piecemeal or made the basis of many separate suits; hence, a judgment on the merits as to one part will bar a subsequent action for the whole, the residue, or another part. It is immaterial that the form of the second action is different from the first. It has been said that as a general proposition whether or not a judgment is a bar to a subsequent action under the rule against splitting causes of action depends on whether the entire amount claimed to be due plaintiff arises out of one and the same act or contract, or whether the several parts arise from distinct acts or contracts. 50 C. J. S. Judgments, Secs. 649, 661. In *Cromwell v. County of Sac,* 94 U. S. 351, the court said (352, 353):

"In considering the operation of this judgment, it should be borne in mind, as stated by counsel, that there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. . . . But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as

an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action.''

■ From a reading of the record in the two cases it is obvious that the plaintiff's cause of action is barred by the judgment entered in the superior court under the doctrine of *res judicata*. The $2,000 and interest for which plaintiff sued in each case arose out of the same contract. The exhibit dated March 12, 1941, was introduced and relied on in the first case and in the second case. Plaintiff's demand is in its nature entire and indivisible and cannot be split up into several causes of action. Hence, the judgment in the first case is a bar to the subsequent action. In *Skolnik v. Petella,* 376 Ill. 500, the court said (507):

''It may be that the pleadings did not raise the question of Mrs. Petella's liability for payment of the debt, but that is not decisive of the question because the pleadings were under plaintiff's control and they might have done so. In *Phelps v. City of Chicago,* supra, the pleadings did not raise the question of reimbursement under the tax deed but the claim was nevertheless barred because they might have done so. Piecemeal litigation is not to be permitted and neither the parties nor the courts may be twice vexed with the same cause of action.''

In the discussion of the defense of *res judicata* we assume, as the respective parties assert, that there was a valid judgment, and also assume, for the purpose of discussion, that the Robert G. Regan Company, made

a party defendant in the second case, was the same corporation which was a party defendant in the first case. Plaintiff states that "there appears to be no evidence in the record that the Robert G. Regan Company in the previous case is the same as the Robert G. Regan Company in the case at bar. As a matter of fact, any reference to this fact in the record seems to indicate that there are two different Robert G. Regan companies. The defendant appears to be trying to be both companies, or neither company, at one and the same time, according to the whim of the moment. Thus, the defendant has not established that it is entitled to claim the defense of *res judicata* as it has not established that it is the same party defendant as the one in the previous case."

█ The record shows that the attention of the court and the parties was called to the fact that the articles of incorporation of the first Robert G. Regan Company were amended on February 24, 1942, so as to change the name to "Rogre Co., Inc."; that these articles of amendment were recorded in the recorder's office of Cook county on March 5, 1942; that on February 28, 1942, on the application of certain incorporators, articles of incorporation were issued by the Secretary of State to "Robert G. Regan Co."; and that these articles were recorded in the recorder's office of Cook county on March 2, 1942. In the trial of the first case the attention of the court and counsel was called to the fact that the name of the first Robert G. Regan Company was changed to Rogre Co., Inc., on February 24, 1942. In that case no attempt was made to have the records of the court show the change of name of that defendant to Rogre Co., Inc. The answer, however, was filed by the Regan Contracting Corporation, Rogre Co., Inc., (formerly known as Robert G. Regan Company) and Robert G. Regan. Apparently, no answer was filed in the first case by the new Robert G. Regan Co. In view of the fact that the exhibit dated

March 12, 1941, upon which plaintiff relied in both cases, was given almost a year before the second Robert G. Regan Company came into existence, it is manifest that neither in the first trial or the second trial could the latter corporation, under the pleadings, be charged with any indebtedness of the first Robert G. Regan Company, whose name was changed to Rogre Co., Inc. In the first case the superior court summons commanded the appearance of Robert G. Regan Company, an Illinois corporation, and the return by the sheriff shows service on ''Robert G. Regan Company, a corporation.'' After the change of name and the issuance of articles of incorporation to the new corporation, there were two corporations. In view of the fact that no order was entered in the first case showing the change of name, we assume that the court in entering the ''order of judgment of January 5, 1945'' was finding in favor of the first corporation known as the Robert G. Regan Company.

Defendant contends in the alternative that it was not in existence at the time of the execution of the document dated March 12, 1941, that it cannot be held to have executed that document, and cannot be liable thereon. Plaintiff's alleged cause of action is against the first Robert G. Regan Company. The name was changed on February 24, 1942, to Rogre Co., Inc. Four days later articles of incorporation were issued to a new corporation called ''Robert G. Regan Co.'' Plaintiff states that a suit may be brought against a corporation in the name in which it contracted the obligation even though the corporation may have amended its articles of incorporation to some other name. In such a situation the attorney representing the corporation would, following the customary practice, suggest the change in name and have the record so show. The change of name would not affect the liability. If the change of name occurred before the commencement of the suit, such action should be commenced by or prose-

cuted against the corporation under its new name. A corporation retains its corporate identity when it changes its name. Similarly, a person remains the same individual when he changes his name. In the case at bar, however, a corporation changed its name and a few days thereafter a charter was issued to a newly organized corporation in the previous name of the corporation that had changed its name. Therefore, there are two distinct entities. In the second case plaintiff sued the Robert G. Regan Co. The defendant in this case, the Robert G. Regan Co., came into existence subsequent to the signing of the document upon which plaintiff relies, and plaintiff cannot maintain its action against it.

Paragraph 157.9, subpar. (c), ch. 32, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 32.009], provides that a corporate name "shall not be the same as, or deceptively similar to, the name of any domestic corporation existing under any act of this State or any foreign corporation authorized to transact business in this State, or a name the exclusive right to which is, at the time, reserved in the manner provided in this act." At the time the charter was issued to the Robert G. Regan Co. on February 28, 1942, there was no domestic or foreign corporation (authorized to transact business in this State) in existence with a name the same as or descriptively similar to Robert G. Regan Co., for at that time the name of the former Robert G. Regan Company had been changed to Rogre Co., Inc. Plaintiff states that the legislature in enacting the corporation act, anticipated "the kind of defense here attempted and very clearly in Sec. 157.57, Ch. 32 [Jones Ill. Stats. Ann. 32.057], stated the law to be: 'Upon the issuance of the certificate of amendment by the Secretary of State, the amendment shall become effective and the articles of incorporation shall be deemed to be amended accordingly. No amendment shall affect any existing cause of action in favor of or against such corporation,

or any pending suit in which such corporation shall be a party, or the existing rights of persons other than shareholders; and, *in the event the corporate name shall be changed by amendment, no suit brought by or against such corporation under its former name shall be abated for that reason.*' '' (Italics by plaintiff.) In the case at bar the corporate name of the Robert G. Regan Company was changed to Rogre Co., Inc. This change was made about a year after the instrument of March 12, 1941, was given and was called to the attention of plaintiff in the first trial. At the time of the amendment of the corporate name, there was no pending suit. The first action was not commenced until August 1942. It cannot be doubted that the amendment of the corporate name could not affect any then existing cause of action against ''such corporation'' or the first Robert G. Regan Company. In our opinion the section cited by plaintiff has no application to the facts of this case. The change in the name of the corporation did not add to or take from plaintiff any right which it possessed at that time.

Par. 2, sec. 43 of the Civil Practice Act (par. 167, sec. 43, ch. 110, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 104.043]) provides that ''when a party is in doubt as to which of two or more statements of fact is true, he may state them in the alternative, or, when they appear in different counts or defenses (whether legal or equitable) he may state the counts or defenses which contain them in the alternative, and a bad alternative shall not affect a good one.'' Commenting on this paragraph, O. L. McCaskill in his work entitled, ''Illinois Civil Practice Act Annotated,'' states (page 103):

''Paragraph (2) of section 43 provides two modes of pleading in all types of actions where there is doubt as to how the issues of fact will be found, either of which modes may be followed, as the parties desire.

Pleading alternatives in a single count or answer is new to Illinois, but obtains in many jurisdictions. The final clause of paragraph (2), providing that a bad alternative shall not affect a good one, though contrary to holdings elsewhere, is but a new application of the principle that a bad count in a declaration, or a bad plea, will be treated as surplusage.

"So far as practicable, pleadings should be truthful, but truth cannot be stated until known, and, for purposes of judicial administration, cannot be known until the trier of facts decides the fact issues. The pleader must anticipate, as best he may, what the truth will be. The most that can be expected of him is that he set forth his claim as to the truth in good faith. But if his claim, though set forth in the utmost good faith, varies greatly from the facts as developed on the trial, it gives no fair notice to the adversary of what the evidence is going to be, and serves no useful purpose. To avoid variances which cannot be foreseen, and to make pleadings and proof correspond, the parties have been permitted to aver their claims or defenses in different ways, though doing so lessens the value of the notice feature of pleadings. A compromise between conflicting aims has been made."

Plaintiff states that a diversity of defenses presented by the defendant "appears so inconsistent as to be absurd." We are of the opinion that under the circumstances the defendant had a right to present the alternative defenses that he relied upon.

It will be noted in the case at bar that the complaint is in the form of a common-law action of assumpsit and seeks a money judgment. It is not a complaint in chancery in the form of a creditor's bill or a complaint in chancery in aid of execution, nor do the pleadings present any issue as to fraudulent transfer or concealment of assets of a judgment debtor. Under the pleadings the court was not concerned with the means

by which a judgment could be satisfied. The issue was whether a judgment should be rendered for the plaintiff and against defendant, or vice versa.

For the reasons stated, the judgment of the circuit court of Cook county is reversed and the cause is remanded with directions to enter judgment for the defendant and against plaintiff.

*Judgment reversed and cause remanded with directions.*

LEWE, P. J., and KILEY, J., concur.