BAIRD & WARNER, INC., Plaintiff-Appellant, *v.* ADDISON INDUSTRIAL PARK, INC., *et al.*, Defendants-Appellees.

First District (4th Division) No. 78-1117

Opinion filed March 1, 1979.—Rehearing denied April 17, 1979.

Sidley & Austin, of Chicago (Henry A. Preston and Dale R. Crider, of counsel), for appellant.

Schiff, Hardin & Waite, of Chicago (Roger Pascal, John J. Voortman, and Craig N. Oren, of counsel), for appellees Industrial Park, Inc. and Bliss & Laughlin Industries, Inc.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The principal issues in this case are first, whether various claims for tortious interference with contractual relations, breach of a brokerage contract, *quantum meruit* and fraud are barred by a determination in a prior suit (affirmed in *Baird & Warner, Inc. v. Ruud* (1976), 45 Ill. App. 3d 223, 359 N.E.2d 745) between the same parties that the plaintiff was not entitled to commissions in connection with the sale of certain stock and that two defendants were not guilty of tortious interference with contractual relations; and second, whether claims previously dismissed voluntarily from the first suit can be refiled more than one year after their dismissal but less than one year from the date of final judgment, the activities complained of all occurring more than five years prior to the time the present suit was filed. We hold that the trial court correctly dismissed the claims against Ruud and Bliss & Laughlin but erred in holding that the claim against Addison for breach of contract in rejecting certain offers to purchase specified lots was barred by the prior litigation.

The plaintiff, Baird & Warner, Inc. (Baird) is a real estate broker. On January 23, 1968, it entered into a brokerage agreement with Addison Industrial Park, Inc. (Addison). Arnold Ruud (Ruud), as president of Addison, signed the agreement as Addison's agent. Under the agreement, Baird was to receive a 10-percent brokerage commission if any or all of the 66 lots owned by Addison were sold during the lifetime of the listing agreement; these lots were Addison's sole asset. Each of the lots was listed

in an addendum to the agreement by lot number, size, price per square foot, and total estimated selling price. Under the contract, Addison was entitled to raise or lower these prices in accordance with the market conditions. This agreement could be terminated by either party on December 1, 1969, after notice, and was the only agreement in effect between the parties and any of the other parties to this lawsuit at any time after January 23, 1968. (*Baird & Warner, Inc. v. Ruud* (1976), 45 Ill. App. 3d 223, 359 N.E.2d 745.) Indeed, it is expressly stated in the listing agreement that there were no oral agreements concerning the subject matter thereof.

While at one time Ruud owned only 30 percent of Addison, sometime before August 7, 1969, he had acquired all of the stock in the corporation. On that date he entered into an agreement with Bliss and Laughlin (Bliss) by which he exchanged all of his shares in Addison for shares in Bliss. Baird & Warner was not the procuring agent.

As pointed out in *Baird & Warner*, subsequent to the stock transfer, Baird continued to treat the agreement as in effect and tendered to Addison an offer (at below contract price) to purchase certain lots. The tender was refused. The exclusive agreement was then terminated by Addison as of December 1, 1969, pursuant to the terms of the contract.

On October 16, 1970, Baird filed suit against Addison, Ruud and Bliss. The suit was in 10 counts, only four of which are material to the present litigation. Count II basically was a claim against Addison and Ruud, under the listing agreement, for a 10 percent commission on the sale of the stock to Bliss. Baird's theory was that the sale of the stock constituted a sale of the real estate and fell under the express provisions of the listing agreement. However, count II also incorporated by reference the principal allegations of count I. Count I had alleged in part that Ruud had been the principal shareholder of Addison and had exercised effective control of Addison and directed all of its activities; that Addison and Ruud engaged Baird's services in 1966 and orally agreed that it would be compensated for its services, such compensation to be in the form of a commission if the property were sold, or for the fair value of such service if other disposition was made such as a sale or exchange of the controlling stock of Addison; and that because of this agreement Baird performed valuable services, enumerated in the complaint, all of which services were of great value to Addison and Ruud and enhanced the value of the Addison tract; and that the fair value of such services, together with the amount of the expenses incurred, was in excess of $400,000. Count V of the complaint was against Ruud alone. That count alleged that Ruud, as president of Addison and its alter ego, rejected certain offers procured by Baird in the spring of 1969 although the offered purchase price was in excess of those set forth in the schedule; that Ruud raised the prices listed

in the schedule although not justified by market conditions and that conduct and his conduct in dealing directly with Bliss constituted a knowing, deliberate, unlawful and wrongful interference with contractual relations between Baird and Addison. Count IX of the complaint was against Bliss and alleged that after the stock transfer in August 1969, Bliss notified Baird that the prices listed in the original schedule were no longer acceptable, and that subsequently Bliss rejected an offer for three lots at the prices stated in the original schedule and that such conduct constituted a knowing, deliberate, unlawful and wrongful interference with contractual relations.

On May 20, 1974, summary judgment was granted for the defendant Bliss on count IX, and it was dismissed from the case. (Counts VIII and X, the only other counts against that defendant, had already been dismissed.) On January 22, 1975, counts I, III, IV, VII and IX were dismissed without prejudice over the objections of the defendants. However, the summary judgment on count IX was never vacated and, of course, became final when the remaining counts were resolved. This happened on March 4, 1975, when a jury returned a verdict for the defendants on both counts II and V. The judgment was affirmed in *Baird & Warner, Inc. v. Ruud* (1976), 45 Ill. App. 3d 223, 359 N.E.2d 745.

On February 2, 1976, Baird refiled the counts which had been dismissed on January 22, 1975, as well as count V which had been adjudicated on March 4, 1975. (Because of the complexity of the allegations and the issues, the specific nature of these allegations will be discussed later in this opinion.) Not surprisingly, the defendants were unhappy about having to relitigate the issues. Accordingly, they moved to dismiss, claiming that the present action was barred by the prior adjudication; Ruud further claims that the claims were barred by the statute of limitations and that they did not state a cause of action. The court ruled that all of the counts were barred by the prior judgment and all counts against Bliss, count I and II against Ruud and counts IV, V, VI, and VII against Addison and Ruud were barred by the statute of limitations.

I.

The first issue before this court is whether the present action is barred by the prior adjudication.

■■■ It is well established in Illinois that a voluntary dismissal is not a bar to another suit for the same cause, assuming, of course, that the second action is timely filed. (*Pratt v. Baker* (1967), 79 Ill. App. 2d 479, 223 N.E.2d 865, *cert. denied* (1967), 389 U.S. 874, 19 L. Ed. 2d 157, 88 S. Ct. 165.) However, here the plaintiff dismissed only some of its claims; others went to judgment. Generally, a plaintiff cannot divide an entire demand or cause

of action so as to maintain several actions for his recovery. As stated by Justice Schwartz in *Prochotsky v. Union Central Life Insurance Co.* (1971), 2 Ill. App. 3d 354, 356-57, 276 N.E.2d 388, 390:

> "The law requires that both in law and in equity a plaintiff must present all grounds of recovery he may have. He cannot preserve the right to bring a second action after loss of the first merely by limiting the theories of recovery opened by the pleadings in the first action. (*F. L. Mendez & Co. v. General Motors Corp.* (1947), 161 F.2d 695; *Ernest Freeman & Co. v. Robert G. Regan Co.*, 332 Ill. App. 637, 76 N.E.2d 514; *Setliff v. Reinbold*, 73 Ill. App. 2d 208, 218 N.E.2d 814; *Pratt v. Baker*, 79 Ill. App. 2d 479, 223 N.E.2d 865; *Phelps v. City of Chicago*, 331 Ill. 80, 85, 162 N.E. 119, 122.) In *Phelps, supra,* the court said (p. 85):
>
>> 'The rule of *res judicata* embraces not only what actually was determined in the former case between the same parties or their privies, but it extends to any other matters properly involved which might have been raised and determined.'
>
> In *Freeman, supra,* the court explicitly clarified the doctrine set down in *Phelps* and held that where a demand or right of action is in its nature entire and indivisible, it cannot be split up into several causes of action and sued piecemeal or made the basis of many separate suits. The court said (p. 615):
>
>> 'A judgment on the merits as to one part will bar a subsequent action for the whole, the residue, or another part. It is immaterial that the form of the second action is different from the first. [W]hether or not a judgment is a bar to a subsequent action under the rule against splitting causes of action depends on whether the entire amount claimed to be due plaintiff arises out of one and the same act or contract, or whether the several parts arise from distinct acts or contracts.' "

This rule is founded upon the plainest and most substantial justice, that litigation should have an end and that no person should be unnecessarily harassed with a multiplicity of suits. *Dorland v. Steinbrecher* (1964), 50 Ill. App. 2d 344, 200 N.E.2d 424; *Consol Builders & Supply Co. v. Ebens* (1975), 24 Ill. App. 3d 988, 322 N.E.2d 248.

Obviously, the question before this court is whether the claims here arose out of the same cause of action as those in the prior action. The mere fact that different claims are alleged is immaterial; the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief. *Ferkel v. Ferkel* (1978), 56 Ill. App. 3d 584, 371 N.E.2d 1289.

■■■ Before we can determine whether the same or a separate cause of action is alleged here, we must determine what is precluded by the first adjudication. The plaintiff is barred from raising in this action all matters relating to the same causes of action against the same parties, which were or might have been litigated in the first suit. (*LaSalle National Bank v. County Board of School Trustees* (1975), 61 Ill. 2d 524, 337 N.E.2d 19, *cert. denied* (1976), 425 U.S. 936, 48 L. Ed. 2d 177, 96 S. Ct. 1668; *Keim v. Kalbfeisch* (1978), 57 Ill. App. 3d 621, 373 N.E.2d 565; *National Tea Co. v. Confection Specialties, Inc.* (1977), 48 Ill. App. 3d 650, 362 N.E.2d 1150.) For this reason we will look at the pleadings in that first suit. The doctrine of *res judicata* is not limited, where the cause of action and the parties are the same, to those matters which were actually litigated and resolved. It is obvious that if an issue was raised by the pleadings, it constitutes a matter "properly involved which might have been raised and determined." (*Phelps v. City of Chicago* (1928), 331 Ill. 80, 85, 162 N.E. 119, 122.) Furthermore, the plaintiff is not merely barred from raising any of the matters actually pleaded in the three counts which were adjudicated. The bar extends also to any other matters which being part of the same cause of action might have been raised, even though the plaintiff did not attempt to do so in the pleadings.

Count II of the 1970 complaint, as we already discussed, alleged that the plaintiff was entitled to recover a commission from Addison and Ruud for the sale of the stock. This was the cause of action alleged. The theory on which the claim was based was that the sale fell within the terms of the written contract. However count II, in incorporating count I, also alleged a cause of action in *quantum meruit*, although it did not seek recovery for this claim. Since under the pleadings any of these issues were properly involved and could have been raised and determined at trial, they cannot now be raised in a second suit against the same parties. Count II went to the jury which returned a verdict on that count for the defendant; the judgment was affirmed on appeal and is *res judicata.*

Count V, as we discussed earlier, sought damages for Ruud's alleged wrongful interference with contractual relations, in rejecting offers to purchase lots, in changing the prices set forth in the schedule, and in dealing directly with Bliss. By its incorporation of other counts, it also raised the issue of Ruud's liability as "alter ego" of the corporation as did count II. This count also went to the jury and the jury rendered a verdict for the defendant. Accordingly, all of these enumerated issues are barred by the prior adjudication.

■■ The plaintiff, however, contends that because the appellate court in *Baird & Warner v. Ruud* did not rule on this issue, the jury verdict is not effective to bar relitigation of the issues involved. We believe the plaintiff to be in error. First of all, it is not clear that the appellate court did not

consider this issue when affirming the judgment. But even assuming that it did not, normally what constitutes a former adjudication rests not on the opinion of the court of review but on the judgment of the trial court which has become final through affirmance. (*Gudgel v. St. Louis Fire & Marine Insurance Co.* (1971), 1 Ill. App. 3d 765, 274 N.E.2d 597.) Any other result would be absurd. A trial court judgment which is not appealed becomes final and *res judicata.* If we were to hold that the findings lose their final effect if the action is appealed, then an appellant by appealing only one issue, could, since the appellate court obviously would not rule on those causes or issues not appealed, relitigate the adjudicated claims which he did not appeal. It is true that under certain circumstances where there is a discrepancy between the affirming court's determination and the trial court's, it is the former that is *res judicata* (*LaSalle National Bank v. City of Chicago* (1977), 54 Ill. App. 3d 944, 369 N.E.2d 1363), but this rule obviously does not apply to a situation where, as here, the court's affirmance of one count does not render the other claims moot. Since an affirmance of the jury's finding on count II did not preclude a reversal of its finding on count V which was broader, we must assume either that both verdicts were affirmed or that only the one was appealed.

◼◼ Count IX was never sent to the jury. Rather, a summary judgment was entered for the defendant, Bliss. While it is true that the plaintiff had a voluntary dismissal entered thereafter as to this count, that voluntary dismissal was ineffective to prevent the binding effect of the summary judgment which had not been vacated. As this court held in *Altman v. Altman* (1974), 22 Ill. App. 3d 420, 318 N.E.2d 61, *appeal denied* (1975), 57 Ill. 2d 606, once the merits of the claim have been determined (in that case by a jury verdict) a voluntary nonsuit entered thereafter will not allow the party to begin his action anew. As we discussed earlier in this opinion, the cause of action alleged in count IX of the original complaint was that Bliss by informing Baird that offers at the prices stated in the original schedule would not be acceptable and in later rejecting offers to buy at the original prices was a wrongful interference with contractual relations. This issue, having once been decided cannot now be relitigated by Baird.

◼◼ In addition, it is clear that two major questions were resolved in the first litigation (1) the sale of the stock did not constitute a sale of the real estate; (2) the sale of the stock did not constitute a breach of the exclusive sales agreement. The determination of these two issues is binding on the parties even if a different cause of action is alleged. *Ashland Chemical Co. v. Pollution Control Board* (1978), 57 Ill. App. 3d 1052, 373 N.E.2d 826; *People ex rel. Village of Justice v. City of Hickory Hills* (1976), 43 Ill. App. 3d 632, 357 N.E.2d 132, *appeal denied* (1977), 65 Ill. 2d 584; *LaSalle*

*National Bank v. Fitzgerald* (1973), 15 Ill. App. 3d 1016, 305 N.E.2d 355.

Bearing all this in mind, let us examine the seven counts of the present complaint.

### A.

Count I seeks damages from Addison and Ruud in the form of the commission due, for the rejection of two offers which Baird procured to purchase three of Addison's lots. This claim is barred as to Ruud. Count V of the original complaint also sought damages for Ruud's part in the rejection of the same two offers. It makes no difference that the claim in the first complaint was in tort and the claim in the second purports to be in contract. Both claims arise out of the same group of operative facts, the making of the brokerage agreement and the rejection of the offers procured by Baird. (*Ferkel v. Ferkel* (1978), 56 Ill. App. 3d 584, 371 N.E.2d 1289.) Compare *Pratt v. Baker* (1967), 79 Ill. App. 2d 479, 223 N.E.2d 865, *cert. denied* (1967), 389 U.S. 874, 19 L. Ed. 2d 157, 88 S. Ct. 165, where a suit on an executor's bond and a suit in tort were held to rise out of the same cause of actions since both theories of recovery were bottomed on the same duties allegedly owed by the defendant.

■■■ We stated the claim against Ruud purports to be in contract. As it stands, the count is insufficient to allege a claim in contract against Ruud since he only signed the contract as an agent for Addison. An agent is not liable on a contract signed as agent for a disclosed principal (*Moore v. Lewis* (1977), 51 Ill. App. 3d 388, 366 N.E.2d 594), nor is a corporate officer normally liable on a contract made by his corporation, even if he is the sole stockholder. (*Kutzler v. Booth* (1975), 27 Ill. App. 3d 768, 327 N.E.2d 63.) The plaintiff contends that the complaint alleges a claim against Ruud as the "alter ego" of the corporation. It does not. There is not one single allegation in count I or the preamble to suggest that Ruud was the "alter ego" of the corporation or that Addison was a sham. (*Kutzler v. Booth* (1975), 27 Ill. App. 3d 768, 327 N.E.2d 63.) To the contrary, the complaint's only allegation as to Ruud's relationship with Addison was that prior to December 1968 Ruud was one of three stockholders of Addison, owning 30 per cent of the stock. But even if we assume that the complaint does effectively allege a claim in contract against Ruud as the "alter ego" of Addison, this as we ruled earlier, was raised by the pleadings in the former action, and could have been litigated. Accordingly, the plaintiff is barred from raising the issue now.

■■ The claim against Addison in count I, however, was not raised in the first action. Nor is a claim for a commission for the sale of stock so interrelated with a claim for a commission for rejecting two offers to

purchase that they can be considered a single cause of action. While the claims both arose out of the same contract, they arose out of separate transactions. We agree with the plaintiff that *Turzynski v. Liebert* (1976), 39 Ill. App. 3d 87, 350 N.E.2d 76, is persuasive here. In that case the plaintiff entered into a contract with the defendant to purchase a medical practice. He first sued for breach of contract alleging that the defendant failed to transfer certain accounts receivable, patient list and medical supplies. The court in rejecting the plea of *res judicata* pointed out that a contract may give rise to more than one cause of action and that litigation of the question of breach of contract by a failure to deliver certain assets would not require a relitigation of the question of the effect of the restrictive covenant. The same is true here. The litigation of the issue whether Addison was entitled to change the pricing schedule will not require a relitigation of the issues connected to the sale of the stock.

■■ Furthermore, we cannot agree with Addison's contention that because this issue was resolved in favor of Ruud, it has been judicially resolved that there was no breach of contract in rejecting the two offers. It is true that the claim against Ruud was resolved favorably to him. It is also true that if the jury determined that there was no breach of contract, they could not have found Ruud guilty of tortious interference with contractual relations. But we do not know that the jury found there was no breach of contract. They may have found Ruud not liable for some other reason. It must be remembered that the doctrine of collateral estoppel, unlike the doctrine of *res judicata*, is only applicable where the issue is actually and necessarily litigated and determined in the first action. *Turzynski v. Liebert* (1976), 39 Ill. App. 3d 87, 350 N.E.2d 76.

Accordingly, while we agree with the trial court that the claim against Ruud was barred by the prior adjudication, we disagree with its conclusion that the claim against Addison in count I was so barred.

### B.

Count II of the present complaint is similar to count I. In it the plaintiff seeks to recover for various breaches of contract by Addison and Ruud in changing the prices set forth in the schedule and in negotiating directly with Bliss and in transferring the stock to Bliss. All of the claims against Ruud were raised in the original count V of the original complaint, although the claim there was in tort not contract, and is barred for the reasons set forth in our discussion of count I. Furthermore, in light of the contract attached to the complaint which discloses that Ruud was not a party to the contract, the count, like count I, fails to state a cause of action in contract.

As to Addison, the question is more complex. Count II alleges, in part, that Addison breached the exclusive sales agreement by negotiating directly with Bliss and selling the tract to Bliss. This precise issue was resolved by the prior judgment on count II in favor of Addison and is barred by that judgment. However, the present count II also alleges that Addison breached the contract by changing the pricing schedule. This claim, for the same reasons we set forth in our discussion of count I, is not barred by the prior adjudication.

## C.

Count III alleges that subsequent to the acquisition of the stock by Bliss, Baird presented it with offers to purchase six lots at the original prices listed in the schedule and that the offers were rejected by Bliss; Baird sues for the commission which would have been due had the offers been accepted. The same claim, however, as to Bliss was made in count IX of the original complaint. For the same reasons pointed out in our discussion of count I against Ruud, it is immaterial that the original count IX was in tort and sought to recover $500,000 whereas the present count III purports to be in contract and seeks to recover only the amount of the commission, $20,445; both claims arose out of the same group of operative facts: the making of the sales agreement, the transfer of the stock to Bliss, the changing of the pricing schedule and the rejection thereafter of offers based on the original pricing schedule.

Nor is it important that in the original action Baird only complained of a rejection of offers to buy three lots whereas here Baird refers to an offer to purchase six. It is clear that the issue is not the rejection of offers; the issue is Addison's right to change the prices in the schedule. If Addison had that right there is no way count II (or the original count IX) could state a cause of action since the allegations specify that the offers were for the original prices not the increased prices. Bliss' nonliability for the change in the pricing schedule being determined by the summary judgment entered in its favor, Baird cannot now bring suit alleging other rejections based on the same transaction.

Our conclusion that the plaintiff's claim is barred although it sought recovery for the rejection of more offers than it alleged in the first suit is supported by *Dorland v. Steinbrecher* (1964), 50 Ill. App. 2d 344, 200 N.E.2d 424, and *Shoemaker v. Geiger* (1975), 30 Ill. App. 3d 27, 331 N.E.2d 637. In *Dorland*, the defendant originally filed a counterclaim seeking to recover for certain material, machine parts and labor furnished by a third party who assigned the claim to the defendant. The defendant lost. He then filed a counterclaim for different items of machinery and parts, labor and material, all of which were covered by the same

assignment. The court held that the claim was barred since all of the claims arose out of the same assignment, pointing out at 50 Ill. App. 2d 344, 347, 200 N.E.2d 424, 425, that:

> " 'If suit is brought for a part of a claim, a judgment obtained in that action precludes the plaintiff from bringing a second action for the residue of the claim, notwithstanding the second form of action is not identical with the first, or different grounds for relief are set forth in the second suit. * * *' 1 Am. Jur., Actions, sec. 96."

In *Shoemaker*, the plaintiff first sued on a guarantee that certain cows were in calf—they were not. He then sued to recover an alleged overpayment for the purchase of certain cattle. The court held this second claim was barred, ruling at 30 Ill. App. 3d 27, 28, 331 N.E.2d 637, 638:

> "It is apparent * * * that both causes of action * · * * are merely different claims for damage arising from a single transaction. Both the alleged 'guarantee' and the 'overpayment' relate to enforcement of the terms of an agreement between the parties for the dissolution of a partnership. A party cannot litigate a cause by parts in different proceedings; a prior adjudication * * * is conclusive not only as to matters raised but as to every other element of damage arising from the same transaction of which they had knowledge and ought to have set up as grounds for relief."

■■ While we have already ruled that it is immaterial that the claim in count IX was in tort and the claim in count III purports to be in contract, we also rule that count IX fails to state a cause of action in contract as to Bliss. Bliss, like Ruud, was not a party to the contract; indeed, unlike Ruud, it did not even sign it. Therefore, like Ruud, it was not bound by the contract and could not have been guilty of a breach of contract. Furthermore, despite the plaintiff's protestations in its brief to the contrary, there are no allegations that Bliss should have been held liable as the "alter ego" of Addison; as we noted earlier the mere fact a stockholder owns 100 percent of the stock is not enough to entitle a court to pierce the corporate veil and hold the stockholder liable on a contract made by the corporation.

Count III also seeks to recover from Addison the amount of the commission lost. For the reasons stated in our discussion of count I, this claim is not barred by the prior adjudication.

### D.

■■ Count IV of the present complaint alleges that Addison and Ruud orally agreed to pay a commission if the Addison tract was sold to Bliss, whether the sale was in the form of a conveyance of title or a sale of the stock. Persuaded by the reasoning of the court in *Prochotsky v. Union*

*Central Life Insurance Co.* (1971), 2 Ill. App. 3d 354, 276 N.E.2d 388, we hold the claim to be barred by the prior judgment. In *Prochotsky,* the plaintiff, an insurance agent, first brought suit against the defendant for commissions on the theory that he had an oral contract with the defendant by the terms of which he was entitled to commission on the policies procured by him although he was not the agent of record, and that the agent of record had assigned his right to the commissions to the plaintiff in writing, which assignment was delivered to the defendant. When the plaintiff lost, it filed another action against the defendant seeking to recover the same commissions; this time its theory was based on insurance industry practice. Justice Schwartz, writing for the court, held the second action to be barred by the first, pointing out that the issue in both actions was the plaintiff's right to recover the commissions due on the policy in question; merely alleging that one action was based on oral contract, while the other was based on industry practice was not sufficient to state a separate cause of action. Justice Schwartz further pointed out that the plaintiff could have presented both theories in the first action. The same is true here. The issue in count II of the original action and in count IV of this action is whether the plaintiff can recover a commission for the sale of the stock. Merely alleging that one action is based on a written contract while the other is based on an oral contract is not sufficient to show distinct causes of action. The plaintiff here could and should have presented both theories in its first action. Indeed, we note that the appellate court stated that the exclusive agreement was the only agreement in effect between the parties and any of the other parties to the lawsuit at any time after January 23, 1968. *Baird & Warner, Inc. v. Ruud* (1976), 45 Ill. App. 3d 223, 226, 359 N.E.2d 745, 748.

## E.

Count V of the present complaint is divided into two parts. The first part seeks to recover for Ruud's wrongful interference with contractual relations in rejecting the offers procured by Baird, in changing the schedule of prices and in dealing directly with Bliss. Precisely these same contentions were alleged in count V of the original complaint and are barred by that judgment.

The second part of count V seeks to recover for Bliss' wrongful interference with contractual relations by its rejection of the offers set forth in the present count III. Since precisely the same contention (except that only three lots instead of six were involved), was made in count IX of the original complaint, that claim, too, is barred. The difference in the number of lots is immaterial for the reasons set forth in our discussion of count III.

### F.

Count VI alleges that the actions of Addison, Ruud and Bliss in rejecting the offers procured by Baird, in changing the schedule of prices, in dealing directly among themselves in making an oral promise to pay and in failing to pay a commission, and in interfering with Baird's contractual relations with Addison were intended to enable the defendants to avoid paying a commission that would have been payable on the sale of the Addison tract and constitute a fraud against Baird. The plaintiff contends that this states a separate cause of action since it states a claim for fraud, citing *Northern Trust Co. v. Essaness Theatres* (N.D. Ill. 1952), 103 F. Supp. 954. This however is not Illinois law. (*Pratt v. Baker* (1967), 79 Ill. App. 2d 479, 223 N.E.2d 865, *cert. denied* (1967), 389 U.S. 874, 19 L. Ed. 2d 157, 88 S. Ct. 165.) In *Pratt*, the plaintiff brought suit against the defendant both in his individual capacity and as executor, the suit being based on the executor's bond. After that complaint was dismissed for failure to state a cause of action, he brought another suit, adding two more theories, tort and fraud, as further grounds allowing the plaintiff to recover. The court held that the prior adjudication was *res judicata*, even of the claim for fraud, since the theories of recovery were all bottomed on the same duties allegedly owed by the defendant.

In the present case, all of the allegations of count VI, with one exception, either involve claims already litigated, *e.g.*, the rejection by Ruud and Bliss of the offer to purchase, the negotiation among the three parties independent of Baird, or claims barred because of claims already litigated, *e.g.*, the claim that Ruud and Addison orally agreed to pay a commission. The exception is the allegation that Addison acted fraudulently in rejecting the procured offers and in changing the schedule of prices. This single claim in count VI is not barred by the prior litigation.

### G.

The last count, count VII, is a claim in *quantum meruit* for the value of the various services rendered. This is the same as count I of the original complaint which, being incorporated into count II, was part of the cause of action before that court and thus is barred by the judgment in that case, whether or not the plaintiff produced any evidence on that issue at the first trial. Indeed, Baird cannot deny that this claim is the same as that presented in the original count I since if it were not, then the plaintiff could not contend, as it does, that the claim is saved from the running of the statute of limitations by section 24 of the Limitations Act (Ill. Rev. Stat. 1975, ch. 83, par. 24a), which allows the refiling of nonsuited claims. *Gibbs v. Crane Elevator Co.* (1899), 180 Ill. 191, 54 N.E. 200; *Butterman v. Steiner* (7th Cir. 1965), 343 F.2d 519.

## II.

The second issue is whether the claims against the three defendants are barred by the statute of limitations. We agree with the trial court that while the claims against Addison in counts I and II are in written contract and thus governed by the 10-year statute of limitations applicable to claims on a written contract, all of the other claims, being governed by the five-year statute of limitations applicable to claims not relating to personal injury or written contract, are barred. The plaintiff contends that the claims against Ruud and Bliss in counts I, II and III are governed by the 10-year statute of limitations since the claim against Addison is governed by that statute, contending that the limitation period is not governed by the relation of the defendant to the subject matter of the action. We disagree. As we ruled earlier, the complaint, which has the contract attached to it, clearly reveals that neither Ruud nor Bliss were parties to the contract; accordingly the complaint failed to state a cause of action in contract against them.

■■ But even if the complaint were sufficient to state a cause of action in contract, the 10-year statute applicable to written contracts would not be applicable. Neither Ruud nor Bliss were parties to the contract; Baird could only seek to hold them liable in contract by producing parol evidence showing that because of their relationship to Addison, they should be held liable as if they were parties to the contract. But where a person is not named in the written contract and parol evidence is necessary to show the existence of the contractual relationship, the contract is unwritten insofar as that person is concerned and the limitations statute relating to written contracts is not applicable. *Matzer v. Florsheim Shoe Co.* (1971), 132 Ill. App. 2d 470, 270 N.E.2d 75.

The plaintiff contends that those claims governed by the five-year statute of limitations are saved by the provisions of section 24 of the Limitations Act (Ill. Rev. Stat. 1975, ch. 83, par. 24a). That statute provided that if the plaintiff was nonsuited, then, whether or not the time limitation for bringing the action expires during the pendency of the suit, the plaintiff may commence a new action within one year or within the remaining period of limitation, whichever is greater, after the plaintiff is nonsuited.

First of all, the 1975 statute referred to nonsuits. The term "nonsuit" in the forerunners of this statute which had similar wording has consistently been held to refer only to involuntary nonsuits and not to voluntary nonsuits. *Koch v. Sheppard* (1906), 223 Ill. 172, 79 N.E. 52; *Boyce v. Snow* (1900), 187 Ill. 181, 58 N.E. 403; *Holmes v. Chicago & Alton R.R. Co.* (1880), 94 Ill. 439.

In 1976 the statute was amended to apply to voluntary dismissal. (*Hupp v. Gray* (1978), 73 Ill. 2d 78, 382 N.E.2d 1211.) The plaintiff has not

contended on appeal that the amended statute is applicable to this action and, indeed, it has recently been ruled by our supreme court in *Arnold Engineering Inc. v. Industrial Com.* (1978), 72 Ill. 2d 161, 380 N.E.2d 782, that a statute of limitations will not be applied retroactively so as to revive a cause of action which had already been barred by the expiration of the original limitation period. That ruling is applicable here since, if the 1975 statute did not save the cause of action, the claim was barred before that statute was amended.

■■ What the plaintiff does contend is that the 1976 amendment merely made clear that the word "nonsuited" includes voluntary dismissals, citing *Roth v. Northern Assurance Co.* (1964), 32 Ill. 2d 40, 203 N.E.2d 415. *Roth* is not applicable here. In *Roth*, the court, while agreeing that the normal assumption is that an amendment is intended to change the law, held that an amendment extending the scope of the statute to include contracts, such as insurance contracts, which contain their own period of limitations, did not change the application of the statute, there being no previous case law to the contrary. Rather, the term "nonsuit" in the statute had been consistently interpreted by the cases to apply only to involuntary nonsuits. It is clear that the legislators, by consistently using the same term "nonsuit" up until the 1976 amendment, intended to incorporate that term into the statute. (*Hupp v. Gray* (1978), 73 Ill. 2d 78, 382 N.E.2d 1211.) Thus, it follows that the 1976 amendment did change the effect of the statute and cannot be considered applicable to actions governed by the prior statute.

Furthermore, we cannot agree with the plaintiff's reasoning that the legislature in amending the statute intended that all nonsuits be protected by the statute. As pointed out in *Hupp v. Gray* (1978), 73 Ill. 2d 78, 382 N.E.2d 1211, under the present statute only voluntary dismissals, not involuntary nonsuits, are protected.

■■ But even if section 24 of the 1975 statute did apply to claims voluntarily dismissed, the plaintiff could not claim its benefit because the action was not timely refiled. The counts were dismissed on January 22, 1975, and were not refiled until February 2, 1976, more than a year after the dismissal. It seems clear from the express language of the statute that where there is only one claim the period for refiling runs from the judgment of dismissal of that claim (*Hupp v. Gray* (1978), 73 Ill. 2d 78, 382 N.E.2d 1211; *Sager Glove Corp. v. Continental Casualty Co.* (1962), 37 Ill. App. 2d 295, 185 N.E.2d 473, *appeal denied* (1963), 25 Ill. 2d 623, but where, as here, there is more than one claim, the period for refiling runs from date the particular claims are dismissed and not from the date of the final judgment as to the remaining claims, as the plaintiff has contended.

 Finally, the plaintiff argues that the filing of the complaint tolled the running of the statute and since it did not run from 1971 to 1975, the claims were not barred when the complaint was refiled in 1977. It is true that some courts have spoken of the statute as being tolled when the complaint is filed. (*E.g., Holland Asphalt Paving Co. v. Bank Building & Equipment Corp. of America* (1978), 57 Ill. App. 3d 751, 373 N.E.2d 501; 25 Ill. L. & Prac. *Limitations* §111 (1956).) It is better, however, to say that the filing of the suit terminates the running of the statute or makes it irrelevant. As the court remarked in *Wallace Grain & Supply Co. v. Cary* (1940), 374 Ill. 57, 58, 28 N.E.2d 107, 108:

> "The commencement of the suit stopped the running of the general Statute of Limitations. The case then became a pending action. There is no Statute of Limitations in this State that runs against an action that is pending in a court of record. A cause docketed in the court is deemed in law to be pending until the matters in controversy have been finally determined. (*Boone v. Boone*, 160 Iowa, 284.) In a case where a verdict has been returned and the rendering of a judgment has been delayed, the cause is pending in the court and continues so until a judgment is rendered on the verdict."

Since the case becomes a pending action, the plaintiff having timely filed suit need not, of course, recover judgment within the statutory time. (*Fox v. Produce Cold Storage Exchange* (1915), 192 Ill. App. 301, *appeal denied*.) Likewise, if suit is brought before rights have accrued through adverse possession for the statutory time, these rights can never accrue since the period stops running once suit is filed. (*Converse v. Dunn* (1897), 166 Ill. 25, 46 N.E. 747; *DeProft v. Heydecker* (1921), 297 Ill. 541, 131 N.E. 114; *Woods v. Glos* (1912), 257 Ill. 125, 100 N.E.2d 516.) But the doctrine that the commencement of suit stops the running of the statute of limitations has never been construed to mean that the statute is tolled during the time the suit is pending so that the plaintiff has that additional time in which to bring a second action. The plaintiff has cited no case and we have found none in which a court has permitted a plaintiff to tack on to the general period of limitation the period of time during which a prior action was pending. To the contrary, both case law and the statutes recognize that the period of limitations may expire during the pendency of a suit. Thus in *Barnett v. Ambler* (1955), 5 Ill. App. 2d 375, 125 N.E.2d 297 (abstract), the court ruled that the statutory period of limitation having expired while the prior suit was pending, the plaintiff could under section 24 bring suit within one year. That section of the statute recognizes that the period of limitations may expire during the pendency of a suit since it states in part "whether or not the time limitation for

bringing such action expires during the pendency of such suit * * *." Indeed, under the former wording of the statute, this was even more obvious since the statute before 1967 read "then, if the time limited for bringing such action shall have expired during the pendency of such suit," and it was recognized that this section was applicable only if the period of limitations expired during the pendency of the suit. *Dukes v. Harrison & Reidy* (1933), 270 Ill. App. 372; *Wiggins Ferry Co. v. Gardner* (1900), 91 Ill. App. 20.

For the reasons stated in this opinion, we agree with the trial court that all of the claims against Ruud and Bliss and the claims against Addison in counts IV and VII and that part of count VI not pertaining to the rejection of the offers to purchase are barred by the prior adjudication. Those claims against Addison in counts I, II, III and VI relating to Addison's rejection of the offer to purchase lots, however, were not in issue in the former litigation and are not barred by *res judicata*. We agree with the trial court that all counts against Ruud and Bliss and counts IV, V, VI and VII are barred by being untimely filed. Counts I, II and III against Addison, being claims upon a written contract, were of course timely filed. Accordingly, we reverse the trial court's dismissal of counts I, II and III against Addison and remand those claims for further proceedings. We affirm the trial court's dismissal with prejudice of the other claims.

Reversed in part; affirmed in part.

JOHNSON and LINN, JJ., concur.