ARTHUR B. MENDELSON, Plaintiff-Appellee, *v.* ELLA LILLARD, d/b/a Ego's Penthouse Lounge *et al.*, Defendant.—(WILLIE JACKSON, SR., d/b/a Topflight Skating Rink, Intervening Appellant.)—ARTHUR B. MENDELSON, Assignee of Mary Colucci, Plaintiff-Appellee, *v.* WILLIE JACKSON, SR., d/b/a Topflight Skating Rink, Defendant-Appellant.

First District (5th Division) Nos. 78-1658, 79-540, 79-570, 79-790 cons.

Opinion filed May 2, 1980.

Arthur H. Grant, Ltd., of Chicago, for appellant.

Sexner & Wolfe, Ltd., of Chicago (Edward A. Scott III, of counsel), for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Willie Jackson, Sr., d/b/a Topflight Skating Rink (Jackson), has brought four separate appeals in this consolidated matter—all of which arise from two forcible entry and detainer actions. In 78-1658, he appeals from a purported denial of his petition to intervene in one of those actions brought by plaintiff against Ella Lillard. The remaining three appeals stem from the other action which was brought by plaintiff against Jackson—79-540 from a judgment entered against him for possession of premises he rented; 79-570 from a denial of two subsequent section 72

petitions as well as a "petition to vacate void judgment"; and 79-790 from the denial of his motion to file an amended petition "to vacate void judgment."

Certain background facts must be explained at the outset. While the record is far from clear as to many of these matters, we have surmised that title to the demised property giving rise to the instant litigation, located at 5600-14 West Madison, in Chicago, was held in a land trust by Central National Bank, as trustee. At the direction of the beneficiary of the land trust, Central National executed two trust deeds to Chicago Title and Trust Company as security for two bearer installment notes. At some point prior to the litigation at hand, it appears that plaintiff became the holder of the notes, trust deeds, and an assignment of rents to the property. It further appears that portions of the second floor of the building were leased to two separate tenants—Ella Lillard, who owned and operated Ego's Penthouse Lounge, and Willie Jackson, Sr., who owned and operated the Topflight Skating Rink. Both had apparently signed leases with an individual named Linda Norris, as agent for Management Enterprises (a management company operated by Central National), and they had always sent their rent payments to Norris. Both were also allegedly unaware of the assignment of rents, and they continued paying Norris. The parties apparently were unable to locate or contact Norris after the instant litigation commenced.

On March 8, 1978, plaintiff filed a forcible detainer action for nonpayment of rent against "Ella Lillard d/b/a Ego's Penthouse Lounge and d/b/a Topflight Skating Ring [sic]," seeking possession of the entire second floor of the building. Lillard appeared and answered as proprietor of both the lounge and the skating rink. A judgment order was entered against Lillard for possession of the entire second floor on July 26, 1978. Jackson then filed a petition for leave to intervene on August 17, 1978, stating in pertinent part that he had entered into a lease with Management Enterprises in 1977 for the second floor of the premises; that he (and not Ella Lillard) owned and operated the Topflight Skating Rink on that floor; that he had a right to possession of the premises occupied by the skating rink through a lease with Management Enterprises, which was signed by its agent Linda Norris; that Ella Lillard is the sole operator of Ego's Penthouse Lounge, which is separate from the Topflight Skating Rink; and that he is now aware of the assignment of rents to plaintiff and is willing to abide by any directive of the court regarding the future payment of rent to him. A hearing was held on the petition, at which it appears the trial court stayed the writ of restitution and continued the hearing to allow Jackson time to locate Linda Norris or work out a settlement with plaintiff. Although no order denying the petition to intervene appears in the record, Jackson nonetheless filed a notice of

appeal (78-1658) on September 15, 1978, purportedly from an order of August 17 "denying the Defendant/Appellant's Petition for Leave to Intervene." Shortly thereafter, this court granted a stay of execution of the judgment and ordered that bond be set at $5,000.

Subsequently, on November 2, 1978, plaintiff filed a second forcible detainer action as "Assignee of Mary Colucci" against Willie Jackson, d/b/a Topflight Skating Rink, for possession of the entire second floor. Jackson in turn moved to stay the proceedings on the ground that an appeal was pending on the denial of his motion to intervene in the action against Ella Lillard; that pursuant to the appeal, he posted a $5,000 case bond "to cover any and all rental payments possibly hereafter due and owing the Plaintiff"; that the appeal bond is adequate to cover "any and all rentals which may hereafter accrue"; and that therefore the second action should be stayed pending the outcome of the appeal on his petition to intervene. After a hearing, the motion to stay was denied, and on January 8, 1979, a judgment order for possession was entered against Jackson in favor of plaintiff and, from that order, Jackson filed a timely notice of appeal (79-540).

Jackson then filed a petition under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 72) on March 21, 1979, seeking vacatur of the judgment for possession. The petition stated that when the judgment was entered, "there already was pending an action which was on appeal between the parties regarding the same subject matter"; that "this court did not have jurisdiction to entertain another forcible detainer action during the pendency of the appeal"; and that "had the [trial] court known of these facts, the court would not and should not have entered a judgment in this cause." The petition was denied, as was Jackson's subsequent motion to vacate the order of denial. On March 29, 1979, Jackson filed a notice of appeal from both orders (79-570).

On April 6, 1979, Jackson filed another section 72 petition which was, in fact, a photocopy of his previous petition. He also filed a "petition to vacate void judgment," seeking vacatur of the judgment for possession, wherein he alleged that in connection with the forcible action he was simultaneously served with a 5-day notice in addition to a 30-day notice of termination of tenancy; that plaintiff filed the forcible action before 30 days had expired; that the action was therefore "premature and void"; that plaintiff designates himself as "assignee of Mary Colucci" but that no assignment was attached to the complaint nor did plaintiff introduce evidence of such an assignment at trial; that the judgment for possession was therefore void; and that plaintiff had no right to bring the forcible action since an appeal was pending (78-1658) and an "appeal bond was in effect covering the premises." After a hearing on April 6, 1979, the trial court denied Jackson's second section 72 petition as well as his petition to

vacate the void judgment. On April 9, 1979, Jackson filed a notice of appeal from the original order of possession, the order denying his first section 72 petition, and the April 6 order denying the motion to vacate the judgment (79-570).

A motion by Jackson to file an amended petition to vacate void judgment was denied on May 9, 1979, and he filed a notice of appeal on May 18, 1979, from the orders of May 9 and April 9 (although the record does not indicate the existence of an April 9 order). Jackson's attorney informed us at the oral arguments of this case that Jackson was in fact ultimately dispossessed, although that is not reflected in the record.

OPINION ·

Initially, we note that although Jackson has docketed four appeals to this court, the issues and arguments presented in his brief are not directed to any particular appeal. We have separated them as follows:

AS TO APPEAL No. 78-1658

Jackson contends that the trial court erred in denying him leave to intervene in the first forcible action brought against Ella Lillard. In response, plaintiff argues that the trial court did not enter any order denying the petition to intervene. We note that an order denying a party the right to intervene has been held to be final and appealable under Supreme Court Rule 301 (Ill. Rev. Stat. 1977, ch. 110A, par. 301). (*Koester v. Yellow Cab Co.* (1974), 18 Ill. App. 3d 56, 309 N.E.2d 269; *Veterans Travel Club v. Illinois Commerce Com.* (1973), 15 Ill. App. 3d 116, 303 N.E.2d 142.) However, a judgment must have in fact been entered. A mere finding upon which no final judgment has been entered is not a final and appealable order. (*Mobil Oil Corp. v. Hurwitz* (1978), 63 Ill. App. 3d 430, 380 N.E.2d 49; *Wilke Metal Products, Inc. v. David Architectural Metals, Inc.* (1965), 55 Ill. App. 2d 34, 204 N.E.2d 35.) Further, if the court retains jurisdiction for future determination of matters of substantial controversy, the order is not final. (*Joliet Federal Savings & Loan Association v. O'Hare International Bank* (1973), 12 Ill. App. 3d 1012, 299 N.E.2d 350; *Impey v. City of Wheaton* (1965), 60 Ill. App. 2d 99, 208 N.E.2d 419.) Thus, if a request to intervene is never ruled upon, there is no appealable order since the failure to rule on a motion is not the equivalent of denial. *Veterans Travel Club v. Illinois Commerce Com.*

Turning to the facts of the instant case, we note that at the hearing of the petition on August 17, 1978, Jackson's attorney argued that intervention should have been allowed to determine the authority of Linda Norris "to enter into these contracts and leases." The court then made statements as follows: "Well, I am not going to let you intervene right now I might consider giving you a short stay here. * * * I will not

allow you to intervene at this time. I will enter and continue your motion to intervene. * * * All right, I am going to stay the writ, enter and continue the motion." Later in the hearing, the trial judge suggested to Jackson that during the stay of the writ, he should offer to pay plaintiff the rent due and file suit against Norris for the rents paid her by mistake. A written draft order was entered, stating, "Writ to Second Floor only * * * stayed SEVEN (7) more days." This is the only order entered on August 17, 1978, and Jackson's notice of appeal is 78-1658 is from an order of that date.

No written order denying Jackson's petition to intervene appears in the record nor did the trial court verbally deny it, and it appears that the court only stayed the writ and continued the hearing on the petition to allow Jackson the opportunity to either bring Norris into court or settle with plaintiff. At the most, the court indicated that Jackson could not establish his right to intervene without the presence of Norris but, as noted above, such is insufficient to constitute an appealable order. Therefore, since there is no order denying Jackson's petition to intervene from which an appeal would lie, we will dismiss No. 78-1658.

As to Appeal Nos. 79-540, 79-570 and 79-790

Jackson initially contends that the trial court improperly refused his motion to stay the second forcible detainer suit. We discern four arguments in Jackson's brief in support of this contention—first, that a supersedeas in the purported appeal from the denial of his petition to intervene prohibited the trial court from further proceeding on the second forcible plaintiff filed; second, that the trial court's refusal to stay the second suit somehow ran afoul of section 48 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 48); third, that the trial court should have granted the stay because the doctrine of *res judicata* barred the maintenance of the second suit; and fourth, that the stay should have been granted under the principle of collateral estoppel.

■■ In view of the fact that Jackson advanced none of these arguments in support of his motion to stay before the trial court, we need not consider any of them here since "[i]t is fundamental that a party may not urge for the first time on appeal, and for the purposes of overturning the decision below, an argument or theory which was not presented to the trial court." *First National Bank & Trust Co. v. City of Rockford* (1977), 47 Ill. App. 3d 131, 137, 361 N.E.2d 832, 837.

It is clear from the record that, in the trial court, Jackson based his motion to stay not on any of the above arguments but solely upon a contention that he should not be required to pay rent since, in his opinion, the purpose of the appeal bond was to cover his liability for rent. Specifically, his attorney argued at the hearing:

"I do not dispute the fact that Mr. Mendelson is due the rent * * * for the months he put in the notice. I am saying he received that already though, Judge. That is the point of the appellate court bond."

The attorney had earlier emphasized, "That is my only point, and that is the essence of my motion to stay." We believe, however, that Jackson's argument was basically an attempted justification for his failure to pay rent and, as the trial judge indicated to plaintiff's attorney, the argument was at best a defense which should have been interposed in an answer (although we make no finding that such would be a valid defense). We therefore conclude that the trial court properly denied Jackson's motion to stay on the basis of the arguments presented.

In any event, we feel the four arguments Jackson presented in his brief here in support of his position that a stay should have been granted are equally without merit. First, he says that "[a] superseades [sic] suspends all further proceedings and the efficacy of a judgment * * *. A superseades [sic] restrains appellee * * * from taking affirmative action to enforce his judgment." He apparently argues that the stay of execution by this court in the first forcible barred the trial court from proceeding on the second action. Our stay order precluded plaintiff from executing the judgment against Lillard in the first action; however, it did not prohibit plaintiff from filing an action against Jackson based upon nonpayment of rent for a different time period.

■ Secondly, he appears to take the position that the following portions of section 48 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 48) required the trial court to grant the stay:

"(1) Defendant may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief upon any of the following grounds. If the grounds do not appear on the face of the pleading attacked the motion shall be supported by affidavit:

* * *

(c) That there is another action pending between the same parties for the same cause.

(d) That the cause of action is barred by a prior judgment."

This position is rejected, not only because it was not raised in the trial court (*First National Bank & Trust Co. v. City of Rockford*), but also because we fail to see its relevance. Subsection (c) would be inapplicable, since Jackson was not a party in the first action and had not obtained an order allowing him to intervene and, thus, the prior action was not "between the same parties." Further, it appears that the two actions were not "for the same cause." Causes of action are considered the same if the same evidence would sustain both. (*Keim v. Kalbfleisch* (1978), 57 Ill.

App. 3d 621, 373 N.E.2d 565.) Here, since plaintiff's first action against Lillard was predicated upon her nonpayment of rent for months prior to May of 1978, and the action against Jackson was based on his nonpayment of rent for August, September and October of 1978, it is clear that the same evidence does not support both actions. Subsection (d) also has no application since there was no prior judgment entered against Jackson as a defendant.

Thirdly, he suggests the stay should have been granted under the doctrine of *res judicata*. This rule provides that once a court has determined a cause of action on the merits, that judgment is a bar to any subsequent cause of action between the same parties or their privies which was or might have been litigated in the earlier proceeding (*Charles E. Harding Co. v. Harding* (1933), 352 Ill. 417, 186 N.E. 152; *National Tea Co. v. Confection Specialties, Inc.* (1977), 48 Ill. App. 3d 650, 362 N.E.2d 1150; 23 Ill. L. & Prac. *Judgments* §291 (1956)), and it applies only in situations where the first and second causes involve the same parties, subject matter and issues (*National Tea Co. v. Confection Specialties, Inc.; Renner v. Greathouse* (1957), 12 Ill. App. 2d 338, 139 N.E.2d 825).

Jackson apparently posits that at the time the second suit was filed, an order in the first suit was under appeal and, asserting that its disposition would have had a *res judicata* effect on the second action, he says that the trial court should have stayed the second action until the appeal process in the first suit was terminated. We disagree. The issue in the first appeal was whether Jackson should have been allowed to intervene in the action against Lillard for nonpayment of rent prior to May 1978; whereas, the issue in the second forcible action was against Jackson and centered around his nonpayment of rent for August through October 1978. Clearly, the same causes of action are not involved, and thus the doctrine of *res judicata* is inapplicable. The cases cited by Jackson in support of his position, *Marx v. Marco* (1947), 331 Ill. App. 239, 73 N.E.2d 20, and *Wiseman v. Law Research, Inc.* (1971), 133 Ill. App. 2d 790, 270 N.E.2d 77, are inapposite since they involved situations wherein the case before the court and the prior litigation dealt with identical issues.

Jackson's final argument that a stay should have been granted is based on the doctrine of collateral estoppel, which is also known as estoppel by verdict and is a branch of the doctrine of *res judicata*. (*Riley v. Unknown Owners* (1975), 25 Ill. App. 3d 895, 324 N.E.2d 78; *City of Chicago v. Mendelson* (1973), 14 Ill. App. 3d 950, 304 N.E.2d 16.) Collateral estoppel was clearly explained by the court in *Creeco Co. v. Northern Illinois Gas Co.* (1966), 73 Ill. App. 2d 218, 222, 219 N.E.2d 257, 259:

"[W]hen some specific fact or question has been actually and directly an issue and has been adjudicated in a former suit and the

same fact or question is again put in issue in a subsequent suit between the parties or their privies who were parties in a former suit, the determination of that fact or question in the former suit, if properly presented and relied on, is conclusive upon the parties and their privies in the latter suit, without regard to whether or not the cause of action is the same in both suits."

Jackson's position appears to be that some unidentified issue which was either determined in the first action or would be in the appeal therefrom precluded consideration of the same issue in the second action and that, therefore, the second action should have been stayed. He fails, however, to point out the question or fact in issue which would have invoked application of the doctrine of collateral estoppel and, accordingly, we must reject his argument. *Celotex Co. v. Koblitz* (1926), 241 Ill. App. 159, cited by Jackson, involved a question decided in a prior proceeding between the parties which was held to be binding in a subsequent suit, and thus the doctrine of collateral estoppel was properly applied. *Celotex* is not helpful here, however, as Jackson has not informed us to the specific question in the prior action which would bring collateral estoppel into play.

■■ Jackson next urges that "Plaintiff did not have a right to bring a forcible detainer suit * * * when he was not the owner of the premises but only the assignee of the mortgagee, and was not entitled to possession himself." We note that Jackson did not raise this defense in an answer or at trial but alluded to it only in a "petition to vacate void judgment," which he apparently made under section 68.3 of the Civil Practice Act. (Ill. Rev. Stat. 1977, ch. 110, par. 68.3.) (This petition was clearly tardy, having been filed more than 30 days after the judgment for possession.) The cases provide that a party will not be permitted to argue on appeal a defense not interposed in his answer (*Government Employees Insurance Co. v. Dennis* (1965), 65 Ill. App. 2d 365, 212 N.E.2d 759; *Kioutas v. City of Chicago* (1965), 59 Ill. App. 2d 441, 208 N.E.2d 587) or, put another way, "[a]n appellant who fails to raise a certain defense at trial may not raise that defense for the first time on review" (*Village of Arlington Heights v. National Bank of Austin* (1977), 53 Ill. App. 3d 917, 919, 369 N.E.2d 502, 504). We accordingly shall not entertain this defense.

Jackson then contends that plaintiff did not have the right to maintain the second forcible detainer suit because he simultaneously served Jackson with a 5-day notice and a 30-day notice of termination of tenancy but filed the action prior to the expiration of 30 days. Again, we note that this defense was not raised in an answer or otherwise at trial, but is first mentioned in the "petition to vacate void judgment." Thus, we need not consider this argument. (*Government Employees Insurance Co. v. Dennis; Kioutas v. City of Chicago.*) Moreover, we note that at the

hearing on his motion to stay the action, Jackson's counsel stated, "I will further represent to this Court that the notice and the service of process in the case now before Your Honor was entirely proper." We therefore find no error in this regard.

For the reasons stated above, Jackson's appeal No. 78-1658 regarding his motion to intervene in the first forcible against Lillard is dismissed. The judgments in appeals 79-540, 79-570, and 79-790 are affirmed.

No. 78-1658, dismissed.

Nos. 79-540, 79-570, and 79-790, affirmed.

LORENZ and MEJDA, JJ., concur.