ROCKFORD MUTUAL INSURANCE COMPANY, Plaintiff–Appellant,

v.

AMERISURE INSURANCE COMPANY and Michigan Mutual Insurance Company, Defendants–Appellees.

No. 90–1050.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 25, 1990.

Decided Feb. 15, 1991.

---

Kathryn A. Spalding, Nancy G. Lischer, Hinshaw & Culbertson, Chicago, Ill., Brian K. McBrearty, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Belleville, Ill., for plaintiff-appellant.

Robert W. Wilson, John R. Abell, Evans & Dixon, Edwardsville, Ill., for defendants-appellees.

Before CUDAHY and POSNER, Circuit Judges, and WILL, Senior District Judge.*

CUDAHY, Circuit Judge.

The issue before us in this appeal involves the reach of Illinois' *res judicata* doctrine. Specifically, we must decide whether an insurer that settles a suit brought against its putative insured can later sue another insurer concerning coverage of that liability, notwithstanding the

---

* The Honorable Hubert L. Will of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

second insurer's involvement in the original litigation.

Ronald McCain filed suit in state court for personal injuries suffered while working on a construction project. He named as defendants both the property owners, Noble/Vollmer Realty, Ron Noble and William Vollmer (collectively, Noble), and the subcontractor, Nick Stevenson. The suit alleged a violation of Illinois' Structural Work Act, Ill.Rev.Stat. ch. 48, paras. 60–69 (1989), which imposes liability on one "having charge of the [project]." Stevenson filed a third-party complaint against the contractor, Noble Construction Company (Noble Construction), claiming indemnity or contribution for any judgment against him. The basis for this claim was that Noble Construction, not Stevenson, was in charge of the construction site. Stevenson was insured by plaintiff Rockford Mutual Insurance Company (Rockford), while Noble and Noble Construction were insured by defendant Michigan Mutual Insurance Company, a subsidiary of defendant Amerisure Insurance Company (together, Amerisure).

At some point during discovery, Rockford realized that Stevenson, as an "employee" of Noble Construction, might be insured under the contractor's policy with Amerisure. Rockford thereupon contacted Amerisure and tendered Stevenson's defense to that company. Amerisure declined, and Rockford continued to defend Stevenson as its insured. The case was later settled, with Rockford paying McCain $120,000 in compensation. Based on the parties' stipulation, the trial judge ordered the case dismissed with prejudice. His order dismissed "the claims of each of the parties against each of the othere [sic] parties hereto...." Order, May 26, 1988.

Thus just prior to settlement Rockford in theory had two claims against Amerisure for indemnity with respect to any payment. First, Stevenson's third party claim alleged that Noble Construction, Amerisure's insured, was actually responsible under the Illinois Structural Work Act. Second, Rockford had a direct claim against Amerisure, alleging that Amerisure should cover Stevenson's liability under its policy with

Noble Construction. The first claim had been already raised in the third party pleadings; the second remained dormant in the rejected tender of Stevenson's defense.

After the settlement, the case was dismissed with prejudice. Rockford brought this action in state court, seeking a declaratory judgment that Amerisure was Stevenson's insurer for purposes of this accident, and that it breached its duty to defend and indemnify him. Amerisure removed the case to federal court on diversity grounds, and the district judge dismissed the action on Amerisure's motion, citing the doctrine of *res judicata* as basis for the dismissal. Rockford appeals.

 Our review of a district court's dismissal is *de novo*. *New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474 (7th Cir.1990). The earlier action was filed in Illinois state court, so we must apply Illinois *res judicata* principles. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). The doctrine of *res judicata*, or claim preclusion, keeps courts from rehearing claims that were raised or could have been raised between the same parties in an earlier suit ending in a final judgment on the merits. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981); *Lee v. City of Peoria*, 685 F.2d 196 (7th Cir.1982) (applying Illinois law). Under Illinois law, for *res judicata* to apply, there must exist (1) a final judgment on the merits in a prior case involving (2) the same cause of action and (3) the same parties or their privies as the case sought to be dismissed. *Torres v. Rebarchak*, 814 F.2d 1219, 1222 (7th Cir. 1987) (involving an Illinois judgment); *People v. De Jesus*, 127 Ill.2d 486, 493, 130 Ill.Dec. 471, 474, 537 N.E.2d 800, 803 (1989); *Rotogravure Service, Inc. v. R.W. Borrowdale Co.*, 77 Ill.App.3d 518, 525, 32 Ill.Dec. 762, 768, 395 N.E.2d 1143, 1149 (1979).

 The first issue we must reach is the question of reservation of rights, which, as we shall see, may be something of a red herring. The district judge noted that, at

the time of Amerisure's refusal to defend, Rockford failed to reserve its rights to challenge Amerisure on the coverage issue. He found this failure telling, citing *Aetna Casualty and Sur. Co. v. Coronet Ins. Co.*, 44 Ill.App.3d 744, 748, 3 Ill.Dec. 371, 374, 358 N.E.2d 914, 917 (1976), for the proposition that a reservation would have prevented any *res judicata* effect from attaching to the prior suit. When an insurer is asked by its insured to defend against liability for which the policy might provide coverage, *Aetna* requires the insurer to reserve its right to contest coverage (or to file separately for declaratory judgment) as against its insured. Without this reservation, the insurer who defends will be estopped under Illinois law from later raising exclusionary coverage defenses. *Id.*

The facts of this case are such, however, that this principle does not affect the outcome. Counsel for both sides appeared quite bewildered about the question whether such a reservation is required as between insurance companies. As a matter of principle and logic, we cannot see why it should be. *Aetna* itself was also a coverage dispute between insurers following a resolution of the underlying liability action, and the *Aetna* court never mentioned that the suing company had earlier reserved its rights against the defending company. A failure to reserve apparently had no impact on the outcome. In any event, the issue is irrelevant with respect to application of general *res judicata* principles. *Aetna* describes a specific estoppel rule which derives from a source other than *res judicata*. Obviously, had Rockford reserved the coverage question as against Amerisure in the stipulation of dismissal, little doubt would remain that the prior action has no preclusive effect on this suit. But the failure to reserve rights will not make a judgment which was otherwise insufficient for *res judicata* purposes preclusive. If Illinois requires a reservation in these circumstances as a matter of its estoppel law, wholly apart from *res judicata*, defendant has cited as to no case containing such a requirement. So we will not pursue the reservation issue further.

■ The issue left to be resolved is *res judicata*'s application to this case. Usually we would answer this question by reference to the three-part test of *Torres v. Rebarchak*, 814 F.2d at 1222. That test determines whether an earlier case has any *res judicata* effect on a later one. We can dispose of the case before us on a more simple ground by questioning what would be the *scope* of the earlier decision's *res judicata* effect, should there be preclusion at all.

■ Rockford correctly points out on appeal that in Illinois there is a strong public policy against exposing the tortfeasor's insurance company in personal injury actions filed by the injured party. *Richardson v. Economy Fire & Casualty Co.*, 109 Ill.2d 41, 51, 92 Ill.Dec. 516, 518–19, 485 N.E.2d 327, 329–30 (1985); *Marchlik v. Coronet Ins. Co.*, 40 Ill.2d 327, 332, 239 N.E.2d 799, 802–03 (1968). This public policy prohibits direct actions against insurance companies, *Johnson v. Ward*, 6 Ill.App.3d 1015, 1022, 286 N.E.2d 637, 642 (1972), but it also bars questions of insurance coverage from even being raised in a trial of the underlying accident liability. *Marchlik*, 40 Ill.2d at 332, 239 N.E.2d at 802–03 (1968) (introduction of evidence of liability insurance in action against alleged tortfeasor constitutes reversible error). Likewise, section 2–406(b) of the Illinois Code of Civil Procedure, Ill.Rev.Stat. ch. 110, para. 2–406(b) (1989), exempts liability insurers from third-party practice.

■ As discussed above, Rockford could seek indemnity from Amerisure in two ways: through the liability of Noble Construction on the underlying violation, and through the coverage of Stevenson under one of Amerisure's existing policies. The first question was properly before the Illinois court in the earlier action. The second was not. Regardless of the disposition of McCain's lawsuit, the coverage issue would remain unresolved. *Res judicata* precludes a party from raising even those issues it failed to raise in a prior action, but only if the issue could have been raised. Here the coverage issue could not have been raised because of the strong public

policy, above noted, against involving insurance companies in the underlying suits to determine the insureds' liability. Hence the question of Stevenson's insurance status, inadmissible in the McCain action, can be raised in this subsequent suit.[1]

■ Even were we to reach *Torres'* three-part test for determining if a prior case has any *res judicata* effect, our decision would be the same. Rockford concedes that there existed a final judgment on the merits. And we agree with Amerisure that Illinois would consider both Rockford and Amerisure to be "parties" to the original suit, given their active role in conducting that litigation. *Earl v. Thompson,* 128 Ill.App.2d 32, 37–38, 262 N.E.2d 320, 323 (1970) (insurance company involved in later suit is barred by *res judicata* for earlier suit against its insured where it controlled the litigation). Nevertheless, *res judicata* will not arise unless the action involves the "same cause of action."

In Illinois, there is some dispute over the test to apply in determining what constitutes the "same action" for *res judicata* purposes. As we described in *La Salle Nat'l Bank v. County of Du Page,* 856 F.2d 925, 931–32 (7th Cir.1988), the varying formulations of this test offered by the Illinois appellate courts fall into two categories. One category is espoused by courts that apply a "same evidence" test, asking whether both actions require the same proof. *See, e.g., Schmitt v. Woods,* 73 Ill.App.3d 498, 499, 29 Ill.Dec. 498, 499, 392 N.E.2d 55, 56 (1979); *National Tea Co. v. Confection Specialties, Inc.,* 48 Ill. App.3d 650, 654, 6 Ill.Dec. 328, 331, 362 N.E.2d 1150, 1153 (1977). The second category derives from courts that have adopted a "transactional" approach, inquiring whether both cases arise from the same group of operative facts. *See, e.g., Morris v. Union Oil Co.,* 96 Ill.App.3d 148, 157, 51 Ill.Dec. 770, 777, 421 N.E.2d 278, 285 (1981); *Baird & Warner, Inc. v. Addison Indus. Park, Inc.,* 70 Ill.App.3d 59, 64, 26 Ill.Dec. 1, 8, 387 N.E.2d 831, 838 (1979).

Within the two groups there are certainly variations, and often the theories overlap. *See Keim v. Kalbfleisch,* 57 Ill.App.3d 621, 624–25, 15 Ill.Dec. 219, 373 N.E.2d 565, 568 (1978) (switching from the "same evidence" test to the "transactional" test in the same paragraph).

We need not resolve this debate. Under either test, the McCain suit would not qualify as the same cause of action for *res judicata* purposes. Applying the "same evidence" test, we concede that there would be some overlap of evidence, presumably involving questions of control at the construction site. But one of the central issues in this case—the interpretation of Amerisure's insurance agreements—was totally absent from the prior suit. No evidence of the meaning of these agreements could have been admitted into the earlier suit. Similarly, the prior case does not satisfy the "transactional" test. The understanding of both parties to Amerisure's insurance agreement lies outside the core of operative facts relevant to McCain's Structural Work Act suit.

To avoid the conclusion we reach, Amerisure stresses the inclusiveness of the trial judge's dismissal, highlighting that it resolved all issues between all parties to the action. Amerisure overlooks the fact that neither it nor Rockford was a party to the prior action, but rather managed the litigation. It is true that Illinois considers insurance companies which take an active role in their insureds' litigation "parties" for *res judicata* purposes. *Earl,* 128 Ill.App.2d at 37–38, 262 N.E.2d at 323. But we are at this point only concerned with the scope of the trial judge's final order; only if he intended to include the insurers in that order must we go on to consider whether they are bound in the case before us. Defendant provides no proof that the Illinois trial judge intended anything more than the traditional understanding of the term "party" when he dismissed the prior suit.

■ Finally, at oral argument, Amerisure raised for the first time the issue of

---

**1.** From our review of the record, we are skeptical whether Rockford raised this point to the district judge below. Amerisure does not argue waiver on appeal, however, so we reach the argument nonetheless.

collateral estoppel, or issue preclusion. The district court did not consider collateral estoppel in its order, nor was it raised in the briefs to this court. Thus the question is waived. Even were defendant properly to have preserved the issue, we could not affirm on the basis of that doctrine. "Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979) (citations omitted). Unlike *res judicata*, however, collateral estoppel will in some cases bar relitigation of a particular issue even where both disputing parties were not bound by the earlier judgment. *Id.* at 327–28, 331, 99 S.Ct. at 649–50, 651. This added potential for binding effect operates fairly only because collateral estoppel requires that the issue have been fairly and fully litigated in the first suit, and that it be necessarily decided by that suit's outcome. *Id.* at 327, 99 S.Ct. at 649; *Suttles v. Vogel*, 126 Ill.2d 186, 195–96, 127 Ill.Dec. 819, 824, 533 N.E.2d 901, 906 (1988) ("an issue which has been raised and decided by a court of competent jurisdiction cannot be relitigated in a subsequent action between the same parties in the same or a different cause of action") (citations omitted); *Kahler v. Don E. Williams Co.*, 59 Ill.App.3d 716, 719, 16 Ill.Dec. 927, 930, 375 N.E.2d 1034, 1037 (1978) ("collateral estoppel can exist only after a fact or question has been put in issue, litigated, and decided").

In the present situation, no fair and full litigation of any issue occurred, and no issue was necessarily decided by the outcome of that litigation. A settlement of the type involved here cannot be the subject of a later collateral estoppel claim. *Kahler*, 59 Ill.App.3d at 719, 16 Ill.Dec. at 929–30, 375 N.E.2d at 1036–37 (1978). *Cf. Morris*, 96 Ill.App.3d at 154, 51 Ill.Dec. at

2. We do not express an opinion that collateral estoppel can never be invoked as the result of a consent decree. *Cf.* Note, *Avoiding Issue Preclusion by Settlement Conditioned upon the Vacatur of Entered Judgments*, 96 Yale L.J. 860 (1987)

774, 421 N.E.2d at 282 (traditional name for doctrine of issue preclusion in Illinois was "estoppel by verdict") (citing *Hanna v. Read*, 102 Ill. 596, 602 (1882)).[2]

For the above reasons, the district court's dismissal is REVERSED and the case is REMANDED for further proceedings.

(arguing issue preclusion should apply to settlements occurring at the end of litigation and conditioned on vacatur solely to avoid future preclusion).