Pablo F. PIRELA, Plaintiff–Appellant,

v.

VILLAGE OF NORTH AURORA,
Defendant–Appellee.

No. 89–1231.

United States Court of Appeals,
Seventh Circuit.

Argued June 14, 1990.

Decided June 28, 1991.

Claudia Oney, Mark Rivera, Chicago, Ill., for plaintiff-appellant.

Ronald L. Kammer, Gerald Haberkorn, Kendall Griffith, Hinshaw & Culbertson, Lynn D. Dowd, Cassiday, Schade & Gloor, Chicago, Ill., for defendant-appellee.

Charles A. Shanor, Gwendolyn Young Reams, Vincent Blackwood, Lamont N. White, E.E.O.C., Washington, D.C., for Amicus Curiae, E.E.O.C.

Before POSNER, FLAUM, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

After being passed over for two promotions and being suspended without pay for various infractions of the police department's rules and regulations, Pablo F. Pirela, a black Puerto Rican, came to believe he was being discriminated against on the basis of his race and national origin. Accordingly, on January 29, 1986, Pirela initiated charges against the Village of North Aurora with the Equal Employment Opportunity Commission by completing an intake questionnaire and being interviewed by an intake officer. At that time, Pirela was informed that a formal charge against the Village would be drafted for his review and signature.

However, before Pirela could bring formal charges against the Village, Police Chief Edward Kelly of the North Aurora Police Department filed a complaint against Pirela which charged Pirela with five infractions of the Rules and Regulations of the North Aurora Police Department. In response to Kelly's complaint, the Board of Fire and Police Commissioners of North Aurora conducted hearings on the matter in April of 1986. After the hearing, the Board found Pirela guilty of four of the five alleged violations and subsequently discharged him from his position with the NAPD.

Pirela filed a complaint for administrative review of the Board's decision in the Circuit Court for Kane County, Illinois. When he presented his case to the circuit court, Pirela argued only that the Board's decision was against the manifest weight of the evidence; he did not introduce (or attempt to introduce) any evidence that his employment was terminated as the result of racial or national origin discrimination. The circuit court concluded that the Board's findings were not against the manifest weight of the evidence and affirmed the Board's decision discharging Pirela on March 26, 1987.

During the pendency of the state court proceedings, Pirela continued to pursue his discrimination charge against the Village. On May 27, 1986, he filed a formal charge of discrimination with the EEOC. Then, later in June of the same year, Pirela amended his EEOC charge to include an allegation of discriminatory discharge. Soon after receiving his right to sue letter from the EEOC in March 1987, Pirela filed

a three-count complaint in federal district court alleging discrimination on the basis of race in the Village's promotion, salary, suspension, and discharge procedures pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, discrimination on the basis of national origin in the Village's promotion, salary, suspension, and discharge procedures pursuant to 42 U.S.C. § 1981, and, violations of the Equal Pay Act, 29 U.S.C. § 201 *et seq.*

The Village moved to dismiss the lawsuit for failure to state a claim for which relief could be granted pursuant to Fed.R.Civ.P. 12(b)(6). The district court granted the motion with respect to count III because the Equal Pay Act applies only to wage differentials based on sex discrimination, *see Ende v. Board of Regents,* 757 F.2d 176, 183 (7th Cir.1985); 29 U.S.C. § 206(d)(1), and Pirela had failed to include any allegations of sex-based discrimination.[1] Although the Village argued that Pirela's Title VII and § 1981 claims were barred by *res judicata,* the district court refused to dismiss counts I and II because Pirela's complaint had made no reference to any prior court proceedings. Instead, the court exercised its discretion and converted the Village's Rule 12(b)(6) motion into a Fed.R. Civ.P. 56 motion for summary judgment. After the parties had each submitted a memorandum addressing the converted motion for summary judgment, the court granted the Village's motion and dismissed Pirela's amended complaint. Pirela now appeals from the district court's grant of summary judgment.

## I.

The federal courts are required to give state court judgments "the same full faith and credit ... as they have by law or usage in the courts of such State." 28 U.S.C. § 1738; *see Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985); *Schlangen v. Resolution Trust Corp.,* 934 F.2d 143, 145 (7th Cir. June 10, 1991); *Torres v. Rebarchak,* 814 F.2d 1219, 1222 (7th Cir.1987). Thus,

when a state court judgment would be given preclusive effect under state law, section 1738 requires the preclusion of Title VII claims, *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 476, 102 S.Ct. 1883, 1894–95, 72 L.Ed.2d 262 (1982); *see also Jones v. City of Alton,* 757 F.2d 878, 883 (7th Cir.1985); *La Salle Nat'l Bank of Chicago v. County of Du Page,* 856 F.2d 925, 930 (7th Cir.1988), *cert. denied,* 489 U.S. 1081, 109 S.Ct. 1536, 103 L.Ed.2d 840 (1989), as well as § 1981 claims. *See Buckhalter v. Pepsi–Cola Bottlers,* 768 F.2d 842, 850 (7th Cir.1985); *Washington v. Groen Div./Dover Corp.,* 634 F.Supp. 819 (N.D.Ill.1986). Under *Kremer,* a court must employ a two-prong test for deciding whether a subsequent claim is barred by the doctrine of *res judicata.* We must first ascertain whether "the law of the state in which the prior judgment is rendered would give that judgment preclusive effect against the claims asserted in the federal action." *Welch v. Johnson,* 907 F.2d 714, 719 (7th Cir.1990) (citing *Kremer,* 456 U.S. at 481–82, 102 S.Ct. at 1897–98). Then, the court must determine whether the party had a full and fair opportunity to pursue its claim in the prior state proceeding. *Id.*

The basic principles of Illinois *res judicata* law are well-established. Under Illinois law, to constitute *res judicata* a decision must involve "(1) identity of parties or their privies in the two suits; (2) identity of causes of action in the prior and current suit; and (3) a final judgment on the merits in the prior suit." *Schlangen v. Resolution Trust Corp.,* 934 F.2d at 146 (7th Cir. June 10, 1991); *Rockford Mut. Ins. Co. v. Amerisure Ins. Co.,* 925 F.2d 193, 195 (7th Cir.1991); *Torres,* 814 F.2d at 1222. However, "the bar of *res judicata* extends not only to questions actually decided, but also to all grounds of recovery and defenses which might have been presented in the prior litigation between the parties." *Henry v. Farmer City State Bank,* 808 F.2d 1228, 1234 (7th Cir.1986) (citing *Lake v. Tomes,* 405 Ill. 295, 90 N.E.2d 774, 777 (Ill.1950)). As a result, "[a] defendant [ ]

---

1. Pirela does not challenge the district court's dismissal of count III on appeal.

may not relitigate a defense, which was available but not raised in a prior action, by making it the basis of a claim in a subsequent action against the original plaintiff." *Id.* at 1234.

■ In this case, the parties contest only the second requirement—the identity of causes of action in the prior and current lawsuits. Specifically, the Village argues that Pirela should have raised his discrimination claims as a defense during his termination proceedings before the Board and circuit court. For the most part, we agree with the Village.

As this court has frequently noted, the Illinois courts have adopted two differing tests—the "same evidence" approach or the "transactional" approach—for determining whether a previous suit should be given *res judicata* effect. *See Rockford Mut. Ins.,* 925 F.2d at 197; *Hagee v. City of Evanston,* 729 F.2d 510, 512–13 (7th Cir.1984). Under the "same evidence" test or "proof" approach, the courts must determine "whether the same evidence would sustain both actions." *Id.* at 513 (citing *Mendelson v. Lillard,* 83 Ill.App.3d 1088, 1094, 39 Ill.Dec. 373, 379, 404 N.E.2d 964, 970 (1980); *Rotogravure Serv., Inc. v. R.W. Borrowdale Co.,* 77 Ill.App.3d 518, 525, 32 Ill.Dec. 762, 767, 395 N.E.2d 1143, 1148 (1978)). On the other hand, "a court employing a transaction approach will focus not on the type of proof required in each suit but the factual setting in which each suit arises." *Hagee,* 729 F.2d at 513. Thus, if both actions arise out of the same group of operative facts, the doctrine of *res judicata* bars the second suit. *Rockford Mut. Ins.,* 925 F.2d at 197; *Hagee,* 729 F.2d at 513; *Baird & Warner, Inc. v. Addison Indus. Park, Inc.,* 70 Ill.App.3d 59, 64, 26 Ill.Dec. 1, 8, 387 N.E.2d 831, 838 (1979).

Pirela's claim of discriminatory treatment by the Village in its termination and suspension procedures constitutes the same cause of action under either the "same evidence" or "transactional" approach. At their most basic, both suits would require Pirela to prove that the Village acted in a discriminatory manner when it suspended and discharged him. It is clear that Pirela would have to use the same proof to establish his federal discrimination claims as he could have presented in defense to his discharge from the NAPD. *See, e.g., Welch,* 907 F.2d at 721. Thus, because Pirela's same evidence would sustain both suits, application of the "same evidence" test would preclude his subsequent lawsuit claiming violations of Title VII and § 1981. Our application of the transactional approach compels the same conclusion. Both of Pirela's claims arose out of the same operative facts: Pirela's misconduct and the NAPD's procedures relating to suspension and termination. Because his Title VII and § 1981 claims in this litigation, as well as the possible defense he had in the state proceedings, concern this single procedural scenario, Pirela's action is barred by the transactional approach.

■ Guided by this court's decision in *Welch,* we reach the opposite result—under both the "transactional" and "same evidence" tests—with respect to Pirela's claims that the Village discriminated against him with respect to wages and promotions. According to the record, Pirela was denied two promotions prior to the events which resulted in his eventual discharge from the NAPD. Pirela's complaint also reveals that the alleged facts evincing the Village's practice of discriminating against Pirela with respect to pay also predated the specific events leading to his discharge. Thus, Pirela's evidence of either of these charges could have had little, if any, relevance to the state proceedings concerning his termination. Nor would Pirela's later dismissal charges be relevant to a federal discrimination claim based on the Village's discrimination against Pirela with respect to wages or the earlier denial of promotions.

A review of the facts under the "transactional" test yields the same results. Pirela alleges that he was denied a promotion to Juvenile Officer in 1984, as well as a promotion to Head Juvenile Officer in 1985, although he was more qualified than the white employee who received the promotion. Therefore, all the facts relevant to the Village's denial of promotions to Pirela

were concluded prior to the facts pertinent to Pirela's discharge action in 1986.

We therefore conclude that Pirela's Title VII and § 1981 claims (alleging that his termination and suspensions were discriminatory) constitute the same cause of action under Illinois *res judicata* law as his state discharge proceeding. However, his claims that the Village denied him promotions and wages because of his race and national origin are separate causes of action not barred by *res judicata.*

## II.

Despite our conclusion that Pirela's claims of discriminatory termination and suspension constitute the same cause of action as the administrative discharge hearing and subsequent circuit court review, his federal suit is not necessarily barred by *res judicata.* It is a well-established principle that "[n]o decision may constitute *res judicata* ... if the party against whom it is asserted has not had a full and fair opportunity to litigate his claims." *Lee v. City of Peoria,* 685 F.2d 196, 201 (7th Cir.1982) (citing *Kremer,* 456 U.S. at 481–82, 102 S.Ct. at 1897). That is, at its most basic, the state proceedings must satisfy minimum due process requirements. *Kremer,* 456 U.S. at 481–82, 102 S.Ct. at 1897–98; *Welch,* 907 F.2d at 719; *Wakeen v. Hoffman House, Inc.,* 724 F.2d 1238, 1241 (7th Cir.1983). Therefore, even though Pirela's claims of discriminatory practices in the Village's termination process arise out of the same facts as his police board hearing, they are not barred if he lacked a "full and fair" opportunity to raise his discrimination claim before the police board.

■ On appeal, Pirela maintains that he lacked a "full and fair" opportunity to litigate his claim of discrimination for several reasons. First, Pirela argues that Illinois law bars the Village from asserting a *res judicata* defense to his Title VII and § 1981 claims because the Board and circuit court had no jurisdiction to hear these claims. We disagree. Although Pirela argues that neither the police board nor the Illinois circuit court had jurisdiction to hear his discrimination claim because only feder-

al courts have jurisdiction over Title VII claims, *Yellow Freight System, Inc. v. Donnelly,* 494 U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990), clearly disposes of this argument. In *Yellow Freight,* the Supreme Court affirmed our decision that the states and federal government share concurrent jurisdiction over Title VII claims. *Id.* at ——, 110 S.Ct. at 1570; *see also Donnelly v. Yellow Freight System, Inc.,* 874 F.2d 402 (7th Cir.1989). Accordingly, the federal courts do not have exclusive jurisdiction over Title VII claims. The police board was therefore permitted to hear Pirela's discrimination defense. *See, e.g., Lee,* 685 F.2d at 200–01 (contemplating police board hearing of plaintiff's discrimination defenses).

■ Pirela also argues that his discrimination claim could not have been heard by either the police board or the state court because neither body had jurisdiction to hear this type of claim under Illinois law. To reach this conclusion, he maintains that the Illinois Human Rights Act vests sole jurisdiction over civil rights claims in the Illinois Human Rights Commission. In support of his argument, Pirela cites *Mein v. Masonite Corp.,* 109 Ill.2d 1, 92 Ill.Dec. 501, 485 N.E.2d 312, 315 (1985), where the Illinois Supreme Court stated that the Illinois Human Rights Commission was to be "the exclusive source of redress for alleged human rights violations" through the "comprehensive scheme of remedies and administrative protections" provided by the Illinois Human Rights Act. However, the lower Illinois courts have interpreted *Mein* to stand only for the proposition that "the Act precludes direct access to the circuit courts for redress of civil rights violations." *Board of Trustees of the Police Pension Fund of the City of Urbana v. Illinois Human Rights Comm'n,* 141 Ill. App.3d 447, 95 Ill.Dec. 759, 763, 490 N.E.2d 232, 236 (1986). *Mein,* therefore, does not control "where another law directs another body to make a determination which necessarily calls into play the subject matter of 'human rights.'" *Id.* Moreover, several decisions, both before and after *Mein,* suggest that administrative bodies are permit-

ted to consider defenses of discrimination during their hearings. *See, e.g., Welch,* 907 F.2d at 723–25; *Lee,* 685 F.2d at 200; *Police Pension Fund,* 95 Ill.Dec. at 764, 490 N.E.2d at 237; *Coler v. Redd,* 100 Ill.App.3d 992, 56 Ill.Dec. 427, 428–29, 427 N.E.2d 622, 623–24 (1981); *Strobeck v. Illinois Civil Serv. Comm'n,* 70 Ill.App.3d 772, 26 Ill.Dec. 911, 915–16, 388 N.E.2d 912, 916–17 (1979); *Fox v. Civil Serv. Comm'n,* 66 Ill.App.3d 381, 23 Ill.Dec. 174, 177–78, 383 N.E.2d 1201, 1204–05 (1978).

■ We also disagree with Pirela's claim that he did not have a full and fair opportunity to litigate his discrimination claim before the Board because he lacked adequate discovery. As an "administrative agency" as defined in Ill.Rev.Stat. ch. 110, ¶ 3–101, the North Aurora Board of Police and Fire Commissioners is subject to the provisions of the Illinois Administrative Review Act. Thus, if Pirela had chosen to raise his discrimination defense before the Board, the Board had the power to secure by subpoena the attendance and testimony of witnesses, as well as the production of books and papers relevant to the hearings. Ill. Rev.Stat. ch. 24, ¶ 10–2.1–17. Pirela, as a party to the action, would have had similar powers of discovery. *See Sullivan v. Village of Bensenville,* 170 Ill.App.3d 255, 120 Ill.Dec. 703, 706, 524 N.E.2d 733, 736 (1988) (plaintiff made discovery request for subpoena from Board for documents); *Wegmann v. Department of Registration and Educ.,* 61 Ill.App.3d 352, 18 Ill.Dec. 661, 665, 377 N.E.2d 1297, 1301 (1978) ("the need for discovery at the administrative level is the same, so as to require disclosure by the agency of evidence in its possession which might be helpful to the accused"); *Greco v. State Police Merit Board,* 105 Ill.App.2d 186, 245 N.E.2d 99, 101–02 (1969) (production of statements of witnesses is required in an administrative proceeding to allow full presentation and meaningful cross-examination); *Reich v. Board of Fire and Police Comm'rs,* 13 Ill.App.3d 1031, 301 N.E.2d 501, 505 (1973) (party may subpoena documents relevant to hearing, but not error to deny the subpoena when plaintiff could not establish relevancy of duty reports and service file).

■ Finally, Pirela argues that he could not have received a full and fair hearing of his discrimination claims because the Board would have refused to consider any defense involving discrimination. In support of this position, he directs our attention to a short exchange found in the record:

Q. [MR. McGUIRE] Officer Pirela, you made reference to being the only black on the North Aurora Police Department; is that correct?

A. Yes.

Q. You are not in any way accusing the chief of police in any way of being anti-black, are you?

A. Partially, yes.

Q. How so, Officer.

A. How so?

Q. Yes.

A. I would like to ask you

Q. Just direct your answer to the three commissioners, if you will.

A. First off, there are several officers on this police department that have been suspended for several different reasons, for [sic] more serious than the chief has ever brought upon against myself. When I was suspended in October, Officer Sawyer was suspended after

MR. McGUIRE: Mr. Chairman, I will withdraw the question. It's not responsive.

MR. COOK: I think it's too late to withdraw the question. He has made an inference from the question.

MR. McGUIRE: I will withdraw the question. The answer is not responsive.

MR. BROIHIER: Do you have any other questions of this witness?

MR. McGUIRE: Yes, I do. I would also ask, as a matter of fact, that the question has been withdrawn and the answer is not responsive to the question and the answer be stricken.

MR. MONACO: Strike the answer.

MR. McGUIRE: Thank you.

MR. MORELLI: May the record reflect that it is our position that, having asked the question, the witness is now entitled to answer. I realize that you have ruled, but I want to make the record complete.

Report of Proceedings before the Police and Fire Commissioners, pp. 22–24 (May 17, 1986). What Pirela fails to point out is that this discussion occurred during cross-examination by counsel for the Village. He had previously made no attempt to introduce any testimony concerning racial discrimination at his hearing nor did he make any further efforts to show his termination was racially motivated.

In any event, there can be little dispute that Pirela's discrimination claims would have been "relevant and admissible in proceedings ... [for] determining whether there was 'cause' for a discharge." *See, e.g., Welch,* 907 F.2d at 724; *Jones v. City of Alton,* 757 F.2d 878, 882 (7th Cir.1985). Illinois courts have "a duty, under the Administrative Review Act, to ensure that due process and an impartial adjudication were afforded in the administrative hearing." *Lee,* 685 F.2d at 201 (citing *Reich v. City of Freeport,* 527 F.2d 666, 671 (7th Cir.1975)). Thus, the state court could have heard Pirela's claim or remanded his case to the Board for further proceedings. *Id.; Wilson v. City of Markham,* 205 Ill.App.3d 984, 150 Ill.Dec. 814, 817, 563 N.E.2d 941, 944 (1990). As the transcript of the Board hearing reveals, Pirela preserved the issue of the Board's failure to consider his testimony concerning discrimination. Nevertheless, while he could have challenged the Board's refusal to hear his testimony concerning racial discrimination, he did not. His failure to litigate his discrimination claims either before the Board or on administrative review in the state circuit court "does not insulate [his] claims from the effects of *res judicata.*" *Welch,* 907 F.2d at 725; *see also Kremer,* 456 U.S. at 485, 102 S.Ct. at 1899 (a plaintiff's failure "to avail himself of the full procedures provided by state law does not constitute a sign of their inadequacy"). We therefore conclude that Pirela had a full and fair opportunity to litigate any claims that the Village's termination and suspension practices were discriminatory.

1. Pursuant to Fed.R.App.P. 43(c)(1) Thomas Richards has been substituted for Jack R. Duck-

### III.

For the foregoing reasons, the district court's grant of summary judgment is affirmed, except for the parts of Pirela's complaint that allege that the defendant discriminatorily denied him promotions and salary. The summary judgment with respect to those claims is reversed and remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART AND REVERSED IN PART.